Dennis MACCHI, Appellant,

v.

Donald H. WHALEY, Clarence T. Hunter, Suzanne Hart, John A. Schicker, Jr., Mayor James Conway, Comprising the Board of Police Commissioners, St. Louis, Missouri, Respondents.

No. 40606.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 21, 1979.

C. John Pleban, London, Greenberg & Fleming, St. Louis, for appellant.

David O. Danis, Samuel B. Murphy, Jr., Whalen, O'Connor, Danis & Tobben, St. Louis, for respondents.

PUDLOWSKI, Judge.

Officer Dennis Macchi, of the St. Louis Metropolitan Police Department, was dismissed from his employment following a hearing of the St. Louis Board of Police Commissioners. Macchi appealed to the Circuit Court of St. Louis, which affirmed the decision of the board. This appeal followed.

The Inspector of the St. Louis Metropolitan Police Department filed a total of nine charges and specifications against Officer Macchi. Appellant was found guilty of seven offenses, violations of the Police Manual.[1] The Police Board ordered appellant dismissed from the Department. The charges which appellant was found guilty of were essentially that:

1. On January 26, 1977, Officer Macchi appeared before Major Brown, Deputy Chief Inspector of the St. Louis Police Department, in an unbuttoned long sleeve shirt in violation of Rule 10, Section 10.024 of the Police Manual.

2. Officer Macchi appeared before Major Brown on January 26, 1977, in a uniform which was not pressed, was dirty and greasy, and in general disarray in violation of Rule 10, Section 10.072 of the Police Manual.

3. Officer Macchi disobeyed orders from a supervisor, in violation of Rule 9, Section 9.001(b) of the Police Manual, by failing to report to the Uniform Division on January 28, 1977, to obtain replacement items for his uniform.

4. When Officer Macchi appeared before Major Brown on January 27, 1977, his hair,

---

1. Board of Police Commissioners, Police Manual, (July, 1970) hereinafter referred to as Police Manual.

sideburns and moustache did not conform with the requirements of Rule 7, Section 7.010(d) of the Police Manual.

5. On May 23, 1977, while a member of the Police Department, Dennis Macchi drove a motor vehicle without the proper state license plates or city sticker in violation of Rule 7, Section 7.010(c) of the Police Manual.

6. Dennis Macchi, while on the Police Department's sick list, left his home for purposes other than obtaining medical attention without notifying the Department in violation of Rule 7, Section 7.010(g) of the Police Manual.

7. On May 25, 1977, Officer Macchi reported to Major Brown's office, while off duty, failing to carry his police revolver, as required by Rule 10, Section 10.080 of the Police Manual.

Appellant contends the circuit court erred in affirming the board's order of dismissal because the findings of fact and orders issued by the board were unsupported by competent and substantial evidence.

Appellant's contention that charges 1, 2, 3 and 4 are not supported by competent and substantial evidence is without merit. The evidence shows these charges arose from incidents which took place on January 26, 27 and 28, 1977. Offenses 1, 2, 3 and 4 concern appellant's personal appearance when he met with Major William E. Brown and Captain Virgil L. Kleine. Appellant admitted that when he appeared before Major Brown he was in a dirty uniform, with his tie loosened and his shirt collar unbuttoned. Macchi also testified that when he appeared in Major Brown's office his hair touched his shirt collar and his moustache was below his lower lip. Captain Kleine testified that on January 27, 1977, he ordered Officer Macchi to report to the Uniform Inspector's Office on the following day, January 28, so he could receive new equipment. Captain Kleine was later informed and the department records indicated that Officer Macchi did not report to the Uniform Inspector's Office as ordered.

Appellant's contention that charges 5, 6 and 7 are not supported by competent and substantial evidence is equally without merit. These charges arose from incidents which took place on May 23, 24, 25 and 26, 1977. The evidence shows that Sergeant Hill saw a car, without the proper state license plates or city sticker, being driven by a man wearing a cowboy hat. Later the sergeant saw appellant near the same car wearing a cowboy hat. Major Brown testified that prior to appellant's dismissal, Officer Macchi had lost more duty time due to sick leave absences than any other officer on the force. Appellant claimed he became ill during the night of May 23. Therefore Macchi telephoned the Police Department at 6:30 a. m. to report his illness and absence. He also called Dr. Carmody, a Police Department physician, to report he had diarrhea. Apparently because appellant had just added another sick leave absence to his long history of nonattendances and he was suspected of working a job prohibited by Police Department regulations and because appellant was believed to be operating an automobile without valid license plates, Major Brown ordered that appellant's actions be scrutinized. On May 24, 1977, Major Brown assigned Officer Gary Fuhr and Sergeant Raymond Reynolds to investigate appellant. Officer Fuhr and Sergeant Reynolds were given instructions to personally contact Officer Macchi and order him to appear before Major Brown. Because appellant had called in sick Officer Fuhr and Sergeant Reynolds appeared at appellant's home, where he was supposed to be recuperating. Upon inquiring the police investigators were told, by appellant's father, that appellant had left for the evening. Officer Macchi did not inform the Department that he felt well enough to leave his home. The police investigators returned the following morning, May 25, 1977, and ordered Officer Macchi to report to Major Brown's office immediately. Major Brown testified that Officer Macchi was not carrying his revolver when he saw appellant later that day.

It is true, as appellant asserts, that the findings and orders of the Board of

Police Commissioners cannot stand in the absence of substantial evidence to support them. *State ex rel. Rice v. Public Service Commission*, 359 Mo. 109, 220 S.W.2d 61 (1949). But it is also true that neither the circuit court nor the court of appeals may substitute its judgment for that of the board. Both the trial and appellate courts are limited to "ascertaining whether the board could have reasonably made its findings and reached its result upon consideration of all the evidence before it and whether the board's decision was clearly contrary to the overwhelming weight of the evidence." *Johnson v. Priest*, 398 S.W.2d 33, 35 (Mo.App. 1965). In this case we believe the above evidence substantially supports each of the offenses of which appellant was found guilty. The record indicates appellant admitted every charge against him, except the accusation that he failed to obey Captain Kleine's order to report to the Uniform Inspector's Office. Appellant offered no evidence that any of the violations did not occur as alleged. He offered only excuses. Appellant explained: His shirt was unbuttoned at the collar because it was too small. His uniform was dirty because he just got off duty. He did not follow an order because he forgot it. He left his home while on sick leave because a friend needed advice concerning marital problems. He did not have his revolver when reporting to Major Brown because his service revolver was being repaired and his back-up gun was in his locker. These explanations do not mitigate the fact that there was substantial evidence to support the board's determination.

Appellant's next contention is that the circuit court erred in affirming the decision and order of the Board of Police Commissioners because the board dismissed appellant for acts and omissions in no way connected with his duties as a police officer. Further, appellant argues that by being dismissed for "acts in his private life" his right of privacy was violated. We do not agree with either of these contentions.

 Appellant alleges that "[o]utside several dress code violations . . . ap-

pellant was found guilty of no charges which were in any way connected to the performance of his duties as a police officer." The records show that aside from three dress code violations appellant was adjudged guilty of failure to obey an order from a superior, operating a motor vehicle without the proper license plates, leaving home while on sick leave without notifying the department, and failure to carry a revolver while off duty. There can be no doubt that appellant's failure to obey Captain Kleine's order to report to the Uniform Inspector's Office directly concerns the performance of his duties as a police officer. The Police Manual, Rule 9, Section 9.001(b) requires every police officer to follow the orders of superiors. Without obedience to orders, it would be virtually impossible to maintain discipline and order within the Department. Appellant's action of driving a motor vehicle without proper license plates and city tax sticker bears on the performance of his duties as a police officer because such an act is inimical to the Police Department's duty to enforce state statutes and municipal ordinances which require automobiles to be licensed and to bear a city sticker. Further, driving an unlicensed automobile violates the spirit of Rule 7, Section 7.010(c) of the Police Manual which requires:

> "Every member of the Department shall, at all times maintain reasonable standards of courtesy in their relations with the public and with other members of the Department and shall conduct themselves in such a manner that no discredit will be brought upon the Department in general or themselves in particular.
>
> Acts contrary to good conduct shall include, but not be limited to, the following:
>
> (c) Any conduct unbecoming to a member of the Department."

The Police Department and the public at large demand that police officers obey the law. Because "[i]t is difficult . . . to maintain mutual and public regard for law enforcement officials . . . ," *Bruns v. Pomerleau*, 319 F.Supp. 58, 62 (D.C.Md.

1970), appellant's violation of the state statute requiring automobiles to bear valid license plates and the municipal ordinance requiring cars to display a city tax sticker was certain to discredit the entire City of St. Louis Police Department in general and the appellant in particular. Therefore, the charge that appellant drove an automobile without valid license plates or city sticker did relate to the performance of appellant's police duties. Rule 7, Section 7.010(q) of the Police Manual prohibits an officer from leaving "his residence or place of confinement while on the sick list except to obtain medical treatment or attention . . ." This rule was promulgated to insure that injured and ailing policemen would recuperate with the smallest possible loss of duty time and to enable the Department to locate its convalescing officers in the event of an emergency or other need. It was also designed to curb abuse of the sick leave system. Appellant's act of leaving his home while on sick leave was connected with the performance of his duties because it was a violation of a regulation which all police officers are to abide, indicated a lack of respect for the Department policy concerning sick leave absences and hindered the investigators from Major Brown's office from contacting him. Appellant's final violation was that he failed to carry a revolver when he reported to Major Brown. All police officers are required to be armed whether on or off duty. Rule 10, Section 10.080 of the Police Manual. Police officers have arrest powers at all times. They are expected to preserve the peace and make arrests when the appropriate situation arises, regardless of whether the officer is on or off duty. It is for the officer's own safety and is a necessary adjunct to his arrest powers that he is required to be armed at all times.

Appellant's contention that his right of privacy was violated because he was dismissed from the Police Department for "acts in his private life" is without merit. Appellant does not cite a single case to support the proposition that the right of privacy encompasses his "right" to perform any of the offenses with which he was charged. Rather, defendant baldly asserts that his right of privacy was violated because he was held responsible for the manner in which he maintained his car and behaved while off duty. We believe that the violations charged against appellant were the proper subject of his employer's concern because each offense was shown to affect in some degree appellant's efficiency in the performance of his duties. *Bruns v. Pomerleau*, 319 F.Supp. 58 (D.C.Md.1970). The offenses appellant was found guilty of were all violations of rules and regulations contained in the Police Manual. These rules and regulations were issued by the Board of Police Commissioners pursuant to the provisions of § 84.140 RSMo. 1969. Appellant had the duty to obey these rules on pain of dismissal. §84.140 RSMo. 1969. The fact that Officer Macchi was not on duty when he committed some of the offenses in question is of no consequence. "He was at all times a member of the Department . . . and was known as such, on and off duty." *Milani v. Miller*, 515 S.W.2d 412 (Mo.1974).

■ Appellant urges that the trial court erred in affirming the findings, decision and order of the Board of Police Commissioners because the board refused to order the Police Department to allow appellant to inspect the Department's internal files relative to his case. Appellant's argument is based on the proposition that a hearing of the board is tantamount to a civil proceeding and as such the liberal discovery provisions of the Missouri Supreme Court Rules apply. We do not agree. The Missouri Rules of Civil Procedure, i. e. Rules 41 through 101, "govern all civil actions in the following courts: Supreme Court, Court of Appeals, circuit courts and courts of common pleas." There is no reference to administrative hearings and we conclude that a Board of Police Commissioners hearing is not governed by Rules 41 through 101. Rather, a hearing of the Board of Police Commissioners to dismiss or otherwise discipline a police officer must be conducted pursuant to the Administrative Procedure Act, Chapter 536 RSMo. 1969. Discovery in

administrative hearings is provided for in § 536.067 to 536.090 RSMo. 1969. Only those methods of discovery specifically enumerated are authorized; all other methods of discovery are excluded. *National Advertising Company v. State Highway Commission*, 549 S.W.2d 536, 541 (Mo.App.1977). There is no provision in the Administrative Procedure Act for discovery of documents by request or motion. Therefore, such a method of discovery is not authorized and the board properly refused appellant's request to inspect the Police Department's internal files.

■ Appellant's final contention is that the procedure by which he was dismissed was improper. Appellant argues that the complaints against him should have proceeded pursuant to § 7.019.[2] Although this argument is initially attractive it is without merit. The procedure for the administration of discipline in the Police Department

2. 7.019 Grievances by Members of Department—Any grievance, complaint or similar problem, regardless of its nature, that a member of the Department desires to present may be presented to either of the two Personnel Relations Representatives, who shall be commissioned officers of the rank of captain, elected by vote of the members of the Department.

3. 7.011 Administration of Discipline—The Board has the power and authority to discipline any member of the Department by dismissal, reduction in rank, forfeiture of pay, or other appropriate action.
Discipline shall be administered through complaint investigations, reported via administrative report, with recommendation.
Complaint investigative reports shall be reviewed by the command rank officers in the chain of command superior to the command rank officer who submits the report, through the Inspector of Police and terminating with the Chief of Police.
When the Chief of Police has formulated his recommendation, but prior to forwarding the recommendation to the Board, the Inspector's Office shall, in writing, notify the Department member and the citizen of the proposed recommendation.
If neither party makes objection, the Chief of Police shall present the report and recommendation to the Board for final review and approval. The Board may take whatever action it deems necessary, including ordering of a hearing if it is not satisfied with the recommendation which the Department member has agreed to accept.

is specifically delineated in § 7.011[3] of the Police Manual. The record indicates that the Department proceeded pursuant to the terms of § 7.011 in dismissing the appellant. No error was committed in proceeding under § 7.011. Further § 7.019 provides that ". . . complaint . . . *may be* presented to either of the two Personnel Relations Representatives." (Emphasis added). Thus, even if § 7.019 were applicable to disciplinary proceedings no error was committed because the complaining officer, Captain Virgil Kleine, did not "desire," as evidenced by his actions, to present the complaint to either of the Personnel Relations Representatives. Appellant also contends that the complaint filed against him was improper because it did not contain the signature of both the complainant and reporting officer. Appellant argues that both the complainant and reporting officer are required to sign the complaint by § 7.008.[4]

4. 7.008 Conduct of Investigations—Preliminary Considerations—(a) With the exception of anonymous telephone complaints and unsigned letters, only those citizen complaints reduced to writing on the "Allegation of Employee Misconduct Report" and signed by the complainant will be investigated. In some cases, a Department member or member's supervisor may be the person making the allegation in writing. Complaints will be provided with a completed copy of this report.
(b) If a complaint alleges a violation of the criminal law, or if during the internal investigation, evidence is obtained to support a criminal violation, the member under investigation shall be immediately advised of his rights under *Miranda*. The member shall also be advised that he may be required to answer questions relating to his Departmental duties, under penalty of dismissal or other action, even though there is a criminal aspect to the case. If a statement is obtained after a member has been advised of and waived his rights, it shall be included in both the internal investigation and the criminal offense report. If the member does not waive his rights, he shall be advised that he must answer questions relating to his Departmental duties for purposes of the internal investigation only. A statement obtained when a member does not waive his *Miranda* rights will not be admissible in the related criminal case.
(c) A Department member may have counsel present when being questioned with respect to a complaint.
(d) The Inspector's Office may require an accused Department member to submit to rea-

Appellant's contention is without merit, § 7.008 does not require the signature of both the complainant and reporting officer. Only the signature of the complainant is required. § 7.008(a). The evidence shows that appellant's immediate superior, Captain Kleine, signed the complaint. Therefore no error was committed in filing the complaint.

We have considered all of appellant's contentions and it is apparent that his dismissal should be upheld. It is so ordered.

SNYDER, P. J., and SMITH, J., concur.

sonable physical or psychological tests for purposes of determining fitness to perform duties or whether there has been a violation of Departmental rules. The accused Department member may request such tests.

(e) At any time during the course of the investigation, the Department member, the complainant, the attorney for either, or any community representative may submit relevant evidence to the Inspector's Office and such information shall become part of the investigation and shall be investigated.

(f) If a complainant withdraws his complaint, the investigation shall immediately cease unless independent evidence exists to support the probability of a violation. Reports concerning withdrawn complaints shall include the investigating officer's opinion, or the complainant's explanation for withdrawing the complaint.

(g) If the investigation reveals that the complaint was made maliciously, in bad faith, or with knowledge that the accusation was false, steps shall be taken, whenever possible, to prosecute the complainant for making a false report of a law violation.

(h) Internal investigations shall proceed without delay, even though there is a criminal aspect to the case and if necessary, an offense report shall be prepared in conjunction with the investigation. If there is a pending criminal investigation, final reports of complaints, or commencement of hearings will be delayed only at the request of the prosecutor. In those cases where criminal action is pending, the Inspector of Police shall advise the appropriate prosecutor, when the final report is completed and ready for submission to the Chief of Police.