Robert JORDAN, Deceased, and
Emmagene M. Jordan, et al.,
Claimants,

v.

ST. LOUIS COUNTY POLICE
DEPARTMENT, Employer.

No. 49477.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 8, 1985.

Jack Randall, St. Louis, for claimants.
Daniel Bartlett, Clayton, for employer.

SMITH, Presiding Judge.

Claimants appeal from an award of the Labor and Industrial Relations Commission denying worker's compensation for the death of Robert Jordan. The denial was based upon the finding of the Commission that "the facts in evidence and the inferences that can be drawn therefrom are insufficient to reach a conclusion that Officer Jordan's death resulted from the course and scope of his employment with the St. Louis County Police Department."

The facts necessary to a resolution of Jordan's status at the time he was killed are undisputed and are contained in a stipulation of the parties which includes the testimony given by three witnesses who testified at the killer's capital murder trial. Jordan had been a St. Louis County police officer for 19 years and was a resident of the City of St. Louis. On May 16, 1981, Jordan came home from his part-time job as a security guard at Fashion Gal, a woman's clothier. He put on civilian clothing and strapped his service revolver behind his back under his shirt. It was his custom always to carry his police identification, badge and revolver whenever he left home. He verified through his wife that the revolver was concealed, and then left his home with his daughter to go shopping. Outside a package liquor and confectionary store in the City of St. Louis Jordan was shot by Samuel McDonald. There was no evidence of what happened immediately prior to the first shot which wounded Jordan but not fatally. After the shot three witnesses saw Jordan on his knees. He pulled his wallet, containing his badge, from his pocket and handed it to McDonald. One witness, Jordan's 11 year old daughter, saw the badge flash as the wallet was handed to McDonald. After receiving the wallet, McDonald turned, started to walk away, looked at the wallet, turned back and shot Jordan. The bullet penetrated two chambers of the heart, passed through the lower portion of the left lung, passed through the stomach and left the body. This shot was fatal. After firing the shot McDonald turned to walk away. Jordan got to his feet, drew his revolver and fired at McDonald, wounding him. Jordan then entered the confectionary, stated he had been shot and to call the police, and then collapsed. He died shortly thereafter. McDonald crawled to his getaway car, driven by his girlfriend, and was taken to the Veteran's Administration hospital. He was located there by the police. Upon inspection of the gunman's car, the police found Jordan's wallet with his badge protruding. McDonald was tried and convicted of capital murder and sentenced to death. *State v. McDonald,* 661 S.W.2d 497 (Mo. banc 1983).

■ The Commission found that Jordan's death did not arise either "out of" or "in the course of" Jordan's employment with St. Louis County. See Sec. 287.120.1 RSMo 1978. Where the facts are not significantly in dispute the question of whether the death arose out of and in the course of employment is a matter of law. *Dillard v. City of St. Louis,* 685 S.W.2d 918 (Mo. App.1985) [9, 10]. As such, the Commission's decision is not binding on the court. *Hunt v. Allis-Chalmers Manufacturing Company,* 445 S.W.2d 400 (Mo.App.1969) l.c. 401. The Worker's Compensation law is to be liberally construed and any doubt as to the employee's right to compensation must be resolved in favor of the employee. *Conyers v. Krey Packing Co.,* 194 S.W.2d 749 (Mo.App.1946) [1].

In *Dillard v. City of St. Louis, supra,* [4–6], we stated the accepted definitions of "arising out of and in the course of" employment as follows:

"An injury 'arises in the course of' employment if it occurs within the period of employment at a place where the employee may reasonably be, while engaged in the furtherance of the employer's business or if he is injured in doing an act reasonably incidental to the performance of his duties, of which his employer might reasonably have knowledge or rea-

sonably anticipate.... (Citations omitted). An injury 'arises out of' the employment if (1) the injury results from a natural and reasonable incident of the employment, a rational consequence of some hazard connected therewith or a risk reasonably inherent in the particular conditions of the employment and (2) if the injury is the result of a risk peculiar to the employment or enhanced thereby."

■ Whether the death is an incident of the employment must be determined by the particular facts and circumstances of each case as no all-embracing definition of the phrase "arising out of and in the course of employment" has yet been framed. *Conyers v. Krey Packing Co., supra*, [2–3]; *King v. City of Clinton*, 343 S.W.2d 185 (Mo.App.1961) [2, 3].

The Commission based its conclusion that Jordan's death did not "arise out of and in the course of" his employment upon essentially two facts—Jordan was off-duty at the time of the shooting and he was outside his jurisdiction. The manual of Conduct and Discipline of the Board of Police Commissioners of St. Louis County lists seven violations under Neglect of Duty. The first states:

"Having knowledge that a crime has been committed and wilfully or through neglect fails to report such knowledge to the proper authority or fails to take reasonable steps to apprehend the offender;"

The fifth states:

"Fails to take appropriate action to protect life and property, preserve the peace, prevent crime, or otherwise enforce all federal, state and local laws and ordinances, *while on duty and within the jurisdiction of the St. Louis County Department of Police; ....*" (Emphasis in original)

None of the other violations constituting neglect of duty contains the underlined phrase. We are led to the conclusion that the conduct prescribed under the first quoted provision is required whether the officer is on or off duty and whether he is within

or without the jurisdiction of the County Police Department.

A general Order of the County Police provides that:

"Police officers on and off duty, while in St. Louis County, shall be required to carry a badge, firearm, and the issued identification."

There is nothing of record to establish that off-duty County police officers are prohibited from carrying their badge and firearm when outside the County. State law in fact authorizes the carrying of concealed weapons by police officers. Sec. 571.030.2 RSMo 1978. The Police Board of the City of St. Louis required that "each armed member of the Department, when on or off duty, while in the State of Missouri, shall carry a revolver...." *Eubank v. Sayad*, 669 S.W.2d 566 (Mo.App.1984) Ftnt. 3. That policy was changed in 1980 to make carrying a weapon while off-duty optional with the officer. It was the custom of Jordan to carry his badge and firearm at all times. As a resident of the City, the County could reasonably anticipate that Jordan would carry both badge and firearm while off-duty in the City even though not required to. Compliance with the obligations of the first quoted paragraph of the Neglect of Duty section would appear to require the officer to have the means to identify and defend himself.

■ In a sense, a police officer is never off-duty. *Eubank v. Sayad, supra*, [4]. This is evident from the Neglect of Duty first provision quoted above. Officers may be disciplined for their off-duty conduct. *Eubank v. Sayad, supra*, [1–3]; *Macchi v. Whaley*, 586 S.W.2d 70 (Mo.App.1979) [3–5]. That does not mean, however, that a police officer is covered by the Worker's Compensation Law at all times regardless of the circumstances of the injury. There must be a correlation between the injury sustained and the employment. *Kansas City Missouri Police Department v. Bradshaw*, 606 S.W.2d 227 (Mo.App.1980) [1, 2]; *King v. City of Clinton, supra*, [5, 6]. That correlation may be found because of a risk peculiar to the employment or en-

hanced thereby. *Dillard v. City of St. Louis, supra,* [4–6].

The County asserts that Jordan was killed while he was shopping which was unrelated to his employment. Had Jordan been injured or killed from a fall while shopping, the County would be right. But he wasn't. He was killed during the commission of a felony. When Jordan first became aware that a felony was in progress (presumably no later than when the first shot was fired) his duty under the first provision of the neglect of duty section was activated. He at that time assumed a duty as a police officer to notify proper authorities and to take reasonable steps to apprehend the offender. That he did not have the opportunity to notify and to take such steps until after the fatal shot was fired does not alter the fact that he was acting as a police officer from the time of the first shot. It is clear that he did in fact at the first opportunity take steps to apprehend the offender and to notify the authorities despite his mortal wound. It is further a reasonable inference that he was killed because he was a police officer. As stated by the Supreme Court in its opinion in *State v. McDonald, supra,* [23]:

> "The obvious inference from the evidence is that defendant spotted the officer's police badge in the wallet and then callously and brutally proceeded to execute the wounded officer."

 Jordan was killed while under a duty as a police officer and his killing was a natural and rational consequence of a hazard or risk inherent in his employment and peculiar to that employment. As such the death of Jordan arose in the course of and out of his employment as a St. Louis County Police Officer and the Commission erred in denying worker's compensation to the claimants.[1]

The Award of the Industrial Commission is reversed and the cause is remanded with directions to enter an award of compensation to the claimants as provided by Sec. 287.010 et. seq. RSMo 1978.

SNYDER and SATZ, JJ., concur.

---

1. The County and the Commission placed reliance upon Jordan being out of his jurisdiction and therefore lacking the authority to arrest. We do not find such lack of authority, if there is such lack, to be of any consequence. We are not persuaded that in fact he lacked such authority. See *State v. Keeny,* 431 S.W.2d 95 (Mo. 1968) [1–3]; *State v. Gay,* 629 S.W.2d 470 (Mo. App.1981) [6].