**Gerald MANN, Claimant/Appellant,**

v.

**CITY OF PACIFIC,
Respondent/Respondent.**

No. 62416.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 29, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 28, 1993.

Application to Transfer Denied
Sept. 28, 1993.

Frank William Kriegel, Jr., Ebert & Menees, St. Louis, for appellant.

Robert N. Hendershot, Evans & Dixon, St. Louis, for respondent.

CRANE, Judge.

Claimant, Gerald Mann, filed a workers' compensation claim for injuries he claimed to have sustained out of and in the course of his employment. The administrative law judge found claimant had sustained a compensable, work-related injury and awarded compensation. The Labor & Industrial Relations Commission [Commission] reversed the award of compensation, with one member vigorously dissenting. We reverse the award of the Commission denying compensation and remand to the Commission for further proceedings.

Claimant testified he was employed by the City of Pacific, Missouri, as captain and assistant chief of police. In this position, he was responsible for employment of personnel, scheduling, assisting patrol officers and "overall police commander type of duties." Claimant's regular working hours were 7 p.m. to 3 a.m. It was part of his usual custom to go to the police station once or twice a day when he was not scheduled to work, including vacation days. During these visits he would review police reports, do scheduling, take care of time records and, if the department was busy, assist the patrol officers. There was no policy against performing such work during off duty hours, however, the activity was considered "unauthorized" in that the City of Pacific would not compensate an employee for such work.

On June 27, 1989, the day of the injury, claimant took a scheduled vacation day. That evening a dispatcher and two patrol officers were on duty. In situations where no command officer was on duty, department policy was that if an emergency command decision needed to be made, the officers should call the chief of police, claimant or a lieutenant. Because claimant had taken a vacation day on June 27, the officers were to call the chief of police if such a situation arose.

On June 27 claimant decided to report to the police station because he had heard a news report that a big storm was approach-

ing and wanted to generally check on how things were going. He arrived at the police station between 10:30–11:00 p.m.

When claimant arrived two officers were patrolling the streets and a dispatcher was alone at the station. At 11:47 p.m. both patrol officers were dispatched to investigate a "shots fired" report. Approximately twenty minutes later the two patrol officers were dispatched to investigate a report of a violent individual. At this point, claimant decided to provide assistance to the patrol officers. He used his personal vehicle which was equipped with emergency police equipment, including a radio, siren, and lights, to go the scene of the call. Claimant testified that no department vehicle was available for use that evening. The department authorized officers to use their own vehicle if one was not available.

While at the scene of the violent person call, the dispatcher notified the patrol officers that a bank alarm was sounding. One of the patrol officers responded to this call, while the second patrolman remained behind at the scene to talk with a distraught teenager. Claimant responded to the bank alarm call as "backup."

While en route to the bank, the patrol officer's automobile stalled as a result of flooding streets caused by the storm's heavy rain. As a result, claimant drove the patrol officer to the bank in his car. After discovering thunder and lightening had set off the alarm and the bank was secure, claimant drove the patrolman back to his car. Claimant then followed the officer to make sure he could get back to the station. Before reaching the police station, claimant stopped at a gas station to refuel his vehicle, which was almost out of gas. After refueling, claimant intended to return to the police station to "make sure that no other major crisis happened." On his way back to his vehicle after paying for the gas, he slipped on the pavement and fell on his right shoulder.

He returned to the police station and reported his injury to the dispatcher. He then drove to St. John's Hospital for treatment of his shoulder and arm which were immobilized. He subsequently had surgery on the shoulder and has not regained full use of that shoulder.

Since claimant was on vacation and had not been called in to work on the day of his injury, he was not compensated for coming in that night, nor did he receive compensatory time off. He was not reimbursed for mileage or gasoline on his personal car that night. The chief testified that he was "not aware" that anything had happened to the extra vehicle available for police use. The police chief testified that claimant routinely came in on his days off. He was not required to come in, but there was no rule against it.

At a workers' compensation hearing, the ALJ determined that claimant sustained 40% permanent partial disability of the right arm "while in [the] course and scope of employment." The ALJ based his finding that claimant was in the course of his employment on the fact that claimant was a supervisor with scheduling duties who could schedule his own time and no rule prevented him from working on vacation days. As a result, the ALJ found the City of Pacific liable for all of claimant's medical expenses and for temporary total disability benefits stemming from the injury.

In a split decision, the Labor & Industrial Relations Commission reversed the award of the ALJ. The Commission determined that the injury did not arise out of and in the course of employment because claimant was on vacation, was not authorized or expected to report for duty, did not wear his uniform, was not driving an official vehicle, and did not purchase gasoline at a service station where the police department had an account, and at the time of the injury he was purchasing gasoline for his personal vehicle.

▆▆▆ When a workers' compensation claim is appealed, we review the whole record in the light most favorable to the Commission's decision, deferring to the Commission when it resolves issues concerning the credibility and weight to be given to conflicting evidence. *Pattengill v. General Motors Corp.*, 820 S.W.2d 112, 113 (Mo.App.1991). In the absence of fraud, the findings of fact made by the Commission within its powers are conclusive and binding. *Id.* We review only questions of law and may modify, reverse, remand for rehearing, or set aside the

award only upon one or more of the following grounds:

(1) that the Commission acted without or in excess of its powers;

(2) that the award was procured by fraud;

(3) that the facts found by the Commission do not support the award;

(4) that there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1 RSMo 1986; *Pattengill*, 820 S.W.2d at 113.

■ The points on appeal are deficient because they raise errors under the standard of review of a court tried case and not under the standard of review of a Commission award as set out in § 287.495.1 RSMo 1986. The argument portions of both briefs, however, sufficiently address the legal question on which this appeal turns. Therefore, we review the contentions made in the argument portion of the brief *ex gratia.*

■ The issue on appeal is whether claimant's injury arose out of and in the course of his employment. Where, as here, the facts are not significantly in dispute, the question of whether or not an injury arose out of and in the course of employment is a question of law. *Jordan v. St. Louis County Police Dept.*, 699 S.W.2d 124, 125 (Mo.App.1985).

A claimant's injury must both *arise out of* and *in the course of* employment. § 287.-120.1 RSMo 1986. These are two separate tests both of which must be met before an employee is entitled to compensation. *Ford v. Bi–State Dev. Agency*, 677 S.W.2d 899, 901 (Mo.App.1984).

### In the course of employment

The Commission determined that the injury did not occur "in the course of employment" because 1) the injury occurred while claimant was on a scheduled vacation day and, therefore, not during a period of employment and 2) claimant was not fulfilling the duties of employment when he was injured.

■ The "in the course of employment" test refers to the time, place, and circumstances under which the injury is received. *Ford*, 677 S.W.2d at 901. An injury occurs "in the course of employment" if it occurs " 'within the period of employment at a place where the employee may reasonably be, while engaged in the furtherance of the employer's business or if he is injured in doing an act reasonably incidental to the performance of his duties, of which his employer might reasonably have knowledge or reasonably anticipate.' " *Jordan*, 699 S.W.2d at 125–26 (quoting *Dillard v. City of St. Louis*, 685 S.W.2d 918 (Mo.App.1985)).

■ Under certain circumstances the period of employment may include periods when an employee voluntarily comes to work to perform activities that are reasonably incidental to the employment. *Page v. Green*, 686 S.W.2d 528, 535 (Mo.App.1985). An employee's course of employment may be expanded to off-duty periods due to the employee's desire to advance his employer's interest and because he was at a place he might reasonably be and reasonably fulfilling duties of his employment. *Id.*

In *Page*, the denial of compensation was reversed where claimant, a daytime warehouse laborer at a seed cleaning facility, went to his employer's premises at night, because there was a threat of rain, to make sure the doors were closed so the seed would not get wet. After closing a door that had been left open, he observed that a machine was malfunctioning and the machine operator was not in the building. While attempting to unclog the machine, which was the operator's responsibility, claimant fell and suffered injuries. *Id.* at 531. The court noted there was no order not to work at the time of the injury. *Id.* at 533.

In *Blair v. Armour and Company*, 306 S.W.2d 84 (Mo.App.1957), an award of compensation was affirmed where a butcher lost his eye as a result of grinding his knives on the employer's premises one hour before he was scheduled to report for work. The court reasoned that sharp knives were essential for the employee to properly do his job and the employer would benefit from the work the employee was doing at the time of his injury. *Blair*, 306 S.W.2d at 86.

In *Coy v. Sears, Roebuck & Co.*, 363 Mo. 810, 253 S.W.2d 816 (1953), the supreme

court affirmed an award of compensation where a Sears appliance salesman was killed in a train accident while en route to a sales call at 10:30 p.m. His working hours were supposed to be 8:30 a.m. to 5:30 p.m., but Sears admitted that any orders the salesman took outside those hours would be filled. In *Coy* the court applied the rule from 58 Am. Jur. § 224 that an injury sustained outside regular working hours may be compensable in some circumstances, particularly if the employee was at the time engaged in some service for the benefit of the employer in connection with his regular duties. *Coy,* 253 S.W.2d at 819.

In each of the above cases, the reviewing court recognized that at the time of the off-duty injury the employee was engaged in some service for the benefit of the employer in connection with his regular duties. *Page,* 686 S.W.2d at 535; *Coy,* 253 S.W.2d at 819; *Blair,* 306 S.W.2d at 86. These cases are consistent with the general rule that "[a]n act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment." 1A Larson's Workmen's Compensation Law, § 27.00 (1993).

In this case, the evidence shows that claimant acted to benefit his employer when he reported to work on his vacation day. A severe rain storm was approaching that evening. Once claimant reported to work he provided backup assistance on two calls. In addition, while performing backup on one of the calls he assisted a patrol officer whose car had stalled due to the heavy rain.

■ Further, by volunteering his help on the night in question, claimant helped his fellow officers perform their duties. Acts undertaken in good faith by one employee to assist a co-employee in the latter's performance of his work are generally within the course of employment. 1A Larson's Workmen's Compensation Law, § 27.11 (1993).

■ In addition, claimant was at a place where he might reasonably be when he slipped and injured himself. A pause by an employee within the reasonable limits of time and place, to obtain food or drink, or to use toilet facilities may be considered reasonably incidental to his work. *Ford,* 677 S.W.2d at 902. The same rationale applies where an employee uses a vehicle in his employment and stops to refuel it. Police department policy gave responsibility for refueling patrol cars to the officers. The police department had accounts with two local gas stations for this purpose. The department did not have an account at the gasoline station where the injury occurred. The gasoline station, however, was along claimant's route back to the police station. There was no rule prohibiting claimant from refueling his vehicle at this gasoline station. Indeed, there was no reason for claimant to refuel at a station where he could get police department credit because his activities that evening were voluntary and, therefore, not compensable.

Claimant was at a place where he might reasonably be fulfilling duties of employment and was engaged in a service for the benefit of his employer in connection with his regular duties. Accordingly claimant's injury arose in the course of employment.

### Arising out of employment

The Commission also found that claimant's injury did not arise out of his employment because "there is no connection between the claimant's injury and his job as a police officer. The claimant was acting as a private citizen filling his personal vehicle with gas at the time of the incident. It certainly was not anticipated or even a 'rational consequence' that the claimant would be injured at the Mobile Mart on the morning of June 27, 1989."

■ An injury arises "out of" employment when there is a causal connection between the nature of the employee's duties or the conditions under which he is required to perform them and the resulting injury. *Ford,* 677 S.W.2d at 901. More specifically, " '[a]n injury "arises out of" the employment if 1) the injury results from a natural and reasonable incident of the employment, a rational consequence of some hazard connected therewith or a risk reasonably inherent in the particular conditions of the employment and 2) if the injury is the result of a risk

peculiar to the employment or enhanced thereby.'" *Jordan,* 699 S.W.2d at 126 (quoting *Dillard v. City of St. Louis,* 685 S.W.2d 918 (Mo.App.1985)).

To meet the first prong claimant must show a direct correlation between the injury and the employment. *Jordan,* 699 S.W.2d at 126. This requirement does not change in situations where the street has become the employee's place of work. Under the "street hazard" doctrine, the inherency of the risk in the working environment is the link which causally connects the employment to the injury. *Liebman v. Colonial Baking Co.,* 391 S.W.2d 948, 953 (Mo.App. 1965). A person injured by conditions existing on the street must show that the causative risk was inherent in those conditions. *Id.* Under this doctrine, the fact that other persons may have been exposed to the same risk at the same time is irrelevant. *Id.* at 954.

In this case there was evidence that it was the department's policy for police officers to refuel vehicles themselves. As we have found, claimant's activities on the evening of June 27 were "in the course of" his employment. Therefore claimant's refueling of his vehicle while using it for police purposes was a reasonable incident of employment. In addition, the approaching storm was a factor in claimant's decision to report to work and the risk of a rain-related accident was inherent to work performed during the storm. The nature of claimant's work included the possibility that he would have to refuel his vehicle that evening. It was an incident of employment for him to refuel his vehicle and the injury was the result of a risk inherent in his working environment.

The fact that claimant was refueling his personal vehicle does not, as the Commission determined, require a finding that the injury did not arise out of employment. Claimant's vehicle was equipped with emergency police equipment and had been used throughout the evening to perform police work. The fuel in the vehicle had been expended performing this work. Even personal actions of an employee are compensable as long as a mutual benefit can be found. A mutual benefit is one in which the benefit derived from the act flows both to the employee and employer. *Thompson v. Otis Elevator Co.,* 324 S.W.2d 755, 758–59 (Mo.App.1959). Claimant's actions clearly benefitted both himself and his employer. His actions placed him in a position where, if the need arose, he could provide assistance to the patrol officers on duty. Claimant's injury arose out of his employment.

*Conclusion*

The Commission erred as a matter of law in finding that claimant's injury did not arise out of or in the course of employment. We reverse the award of the Commission denying compensation. In denying compensation on the grounds that the injury did not arise out of and in the course of employment, the Commission did not reach the issues of notice or the amount of the award, which were also before it. We remand to the Commission for the resolution of these issues.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.