

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| ESTATE OF DALE NEWMAN BY | ) | |
| TRACEY EATHERTON, | ) | |
| | ) | No. ED107986 |
| Appellant, | ) | |
| | ) | |
| v. | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| CITY OF LEADWOOD, MISSOURI, AND | ) | |
| DIVISION OF WORKERS | ) | Injury No: LoD2014-04 |
| COMPENSATION AS ADMINISTRATOR | ) | |
| OF THE LINE OF DUTY | ) | |
| COMPENSATION FUND, | ) | |
| | ) | Filed: August 18, 2020 |
| Respondents. | ) | |

## Introduction

The Estate of Dale Newman (Estate) appeals the award of the Labor and Industrial Relations Commission (Commission) denying compensation from the Line of Duty Compensation Fund (LDC Fund), Section 287.234.10.[1] Because we find that Dale Newman (Chief Newman), Chief of Police for Respondent City of Leadwood (City), did not die in the "line of duty" within the meaning of Section 287.243.2, we affirm.

---

[1] All statutory references are to RSMo. Cum. Supp. 2013, unless otherwise indicated.

Background

Chief Newman died on August 27, 2014. Tracey Eatherton[2] timely filed a claim on behalf of the Estate for benefits from the LDC Fund, which provides a $25,000 cash benefit to survivors of law enforcement officers[3] who are killed in the line of duty. After an initial administrative determination denying benefits, the Estate filed an application for review, and an Administrative Law Judge (ALJ) subsequently conducted a hearing, after which the ALJ denied the Estate's claim. The Estate appealed to the Commission, which incorporated the ALJ's findings by reference. The facts found by the Commission are not in dispute on appeal.

At the time of his death, Chief Newman served as the chief of police for the City. In that capacity, Chief Newman "was always subject to call." The City did not provide detailed information such as copies of operations and procedures manuals which govern police duties and conduct, policies relating to supplemental employment, or details regarding Chief Newman's activities in the six- to eight-week period preceding his death.

Chief Newman also held a second job as a warehouse worker with United Parcel Service (UPS) in Crystal City, Missouri, where he loaded package delivery trucks. On August 27, 2014, Chief Newman was loading delivery trucks at the UPS facility, when he suffered a fatal heart attack. The medical examiner concluded the cause of death was arteriosclerotic and hypertensive cardiovascular disease and that the manner of death was natural.

---

[2] Tracey Eatherton is the mother and natural guardian of the children of Newman, and the affiant in a small estate opened in St. Genevieve County, Missouri.
[3] Section 287.243.2 identifies multiple professions that qualify for benefits from the LDC Fund, but we refer only to law enforcement officers, as relevant here.

Dr. Stephen Schuman submitted a report to the Commission based upon his review of Chief Newman's medical records and the medical examiner's report. Dr. Schuman noted that Chief Newman's left anterior descending coronary artery was 90 percent obstructed, subjecting Chief Newman to the risk of ischemia, which results from increasing demand for or decreasing supply of blood to the heart. Physical exertion can decrease blood supply to the heart, which, in turn, can give rise to ischemia, resulting in a coronary event such as a heart attack. Dr. Schuman noted that the physical exertion performed by Chief Newman while loading delivery trucks may cause ischemia. Hot weather, common to Missouri in late August, may also intensify ischemia.

Additionally, Dr. Schuman noted that Chief Newman "suffered significant emotional distress as police chief and that he was taking anti-depressants." Dr. Schuman concluded that on August 27, 2014, Chief Newman "developed ventricular fibrillation due to ischemia caused by significant isometric exertion in hot weather which was contributed to by his being under constant emotional distress as police chief." He then opined, in relevant part, that "Chief Newman's work for UPS on 8/27/2014 was the prevailing cause of his cardiac death and his work as police chief directly contributed to his death."

The Commission affirmed the decision of the ALJ, incorporating it by reference without making additional findings. The ALJ made rulings of law on two issues. First, the parties disputed which version of the Line of Duty Compensation Act (Act), codified in Section 287.243, applies. The legislature amended the Act in 2014, and the amendments became effective on August 28, 2014, the day after Chief Newman's death. The ALJ determined that the 2014 amendments were substantive and therefore did not apply in the present case.

Second, the ALJ concluded that under the prior version of the Act (the 2013 LDC Act), in effect on the day of Chief Newman's death, the Estate was ineligible for benefits because Chief Newman's death did not occur while he was "in the active performance of his . . . duties within the ordinary scope of his . . . respective profession while . . . on duty," as required by Section 287.243.2(5). Thus, the ALJ denied benefits, and the Commission adopted such findings. This appeal follows.

Discussion

The Estate raises three points relevant to this appeal.[4] In Points I and II, the Estate argues that the Commission erred in applying the 2013 LDC Act because the 2014 amendments were procedural and thus should apply retroactively.[5] In Point III, the Estate argues that even under the 2013 LDC Act, the Estate is entitled to benefits. The principal issue here is whether Chief Newman died "in the active performance of his duties,"[6] a requirement for benefit eligibility both before and after the 2014 amendments. Thus, we address the Estate's points on appeal together.

We review decisions of the Commission under Section 287.495, which states that this Court "shall review only questions of law, and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

---

[4] In Point IV, the Estate argues the Commission erred in applying the "prevailing factor" causation test in the general workers' compensation statute, Section 287.020.3, rather than the causation test contained in the LDC Act. Because we find the Estate is ineligible for benefits based on the fact that Chief Newman was not engaged in the active performance of his duties as police chief when he suffered a fatal heart attack, we do not address this issue. Point denied as moot.

[5] Point I contains the Estate's legal argument, and Point II applies the present facts to the amended version of the Act.

[6] We note that Section 287.243.2(5) describes eligibility using the phrase "his or her," in order to encompass any claimant. Because Chief Newman is male, when applying the Act to the facts of the present case, we quote the operative statutory phrase using only the descriptor, "his," for the sake of simplicity.

4

> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award."

Section 287.495.1. Here, the issues of which version of the Act applies, and the interpretation of the phrase "in the active performance of his duties," are legal issues, which we review *de novo*. See Finnegan v. Old Republic Title Co. of St. Louis, Inc., 246 S.W.3d 928, 930 (Mo. banc 2009) (statutory interpretation is question of law, reviewed *de novo*); Files v. Wetterau, Inc., 998 S.W.2d 95, 97 (Mo. App. E.D. 1999) (giving no deference to Commission's determination of whether statute should be retroactively applied). "When the relevant facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of law requiring *de novo* review." Treasurer of State-Custodian of Second Injury Fund v. Witte, 414 S.W.3d 455, 461 (Mo. banc 2013).

First, the Estate argues that the 2014 amendments to the Act apply here. Both versions of the Act provide that in timely claims involving the "death of a law enforcement officer . . . killed in the line of duty, compensation shall be paid, if the division finds that the claimant is entitled to compensation under this section." Similarly, both versions include in their respective definitions of "killed in the line of duty," the requirement that the death, or the event causing the individual's death, occurs when he or she is "in the active performance of his or her duties."

However, the 2014 amendments significantly altered Section 287.243.2(5)'s definition of "killed in the line of duty" in two key respects, as relevant here. First, the 2013 LDC Act contains additional language following the common language noted above. It requires that the event causing death occur "in the active performance of his or her duties

5

*within the ordinary scope of* his or her respective profession *while the individual is on duty . . . .*" (emphasis added). The legislature removed both italicized phrases in the 2014 amendments. The subsequent version of the Act states that the event causing death occurs while the individual "is in the active performance of his or her duties in his or her respective profession . . . ." Additionally, an eligible event can occur under certain circumstances, "even if the individual is off duty." Section 287.243.2(5)(b), RSMo. Cum. Supp. 2014. Thus, the 2014 amendments widened the scope of activities during which an event causing death would render an estate eligible for benefits from the LDC Fund.

The Commission determined that this change was substantive in nature, rather than procedural, and thus the 2014 amendments could not be applied retroactively. We agree. The 2014 amendments expanded the factual circumstances under which claimants would be eligible for benefits, which is a substantive change to the LDC Act. See Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 769 (Mo. banc 2007) ("Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines, and regulates rights") (quoting Wilkes v. Mo. Hwy. & Transp. Comm'n, 762 S.W.2d 27, 28 (Mo. banc 1988)). As such, the 2014 amendments cannot be applied retroactively. Id.

However, under either version of the Act, the dispositive issue here is whether Chief Newman was engaged "in the active performance of his duties" as police chief at the time he suffered a fatal heart attack. Here, Chief Newman was on the dock in Crystal City loading packages into a UPS delivery truck. The Estate notes, as did the Commission, evidence in the record that Chief Newman was always on call in his role as police chief,

6

and effectively, never off duty.[7]  See also Spieler v. Village of Bel-Nor, 62 S.W.3d 457, 459 (Mo. App. E.D. 2001) (noting statement that "in a sense, a police officer is never off duty" accurately reflects the state of the law) (quoting Eubank v. Sayad, 669 S.W.2d 566, 568 (Mo. App. E.D. 1994)).  The Estate argues it follows that Chief Newman's actions were always in the active performance of his duties as police chief.  We disagree.

Though no Missouri court has analyzed Section 287.243.2(5)'s phrase "in the active performance of his or her duties [of] his or her respective profession," Missouri courts have recognized that a "discrete body of law has developed regarding workers' compensation for police officers," which renders a discussion of cases relating to other occupations irrelevant.  Spieler, 62 S.W.3d at 460 (citing cases).  Such cases consider a police officer's actions under the general workers' compensation standard of eligibility, which is whether a claim "aris[es] out of and in the course of the [officer]'s employment," under Section 287.120.1.[8]  While this language differs from that of the LDC Act, we find analysis of liability in workers' compensation cases involving police officers to be instructive here.

In such cases, whether or not the officer is technically on duty is a factor in the analysis of whether the injury arises out of and in the course of the officer's employment, but it is not determinative.  See  Jordan v. St. Louis County Police Dep't, 699 S.W.2d 124, 127 (Mo. App. E.D. 1985) (noting Eubank's statement that police officer is never off duty in one sense, but clarifying "[t]hat does not mean, however, that a police officer is covered

---

[7] The effect of this evidence on the determination of whether Chief Newman was "on duty" at the time of his death is a legal issue that we need not decide here.  While the 2013 LDC Act requires that an officer be on duty at the time of the event causing his or her death, which the 2014 amendments removed, an individual's on- or off-duty status is distinct from the nature of the activities an individual performs in a particular moment while on or off duty.  The question we address here is whether the nature of Chief Newman's activities at the time of his death constituted "the active performance of his duties" as police chief, whether or not he was technically on duty.

[8] This language is from the current version of the statute, Section 287.120.1, RSMo. Cum. Supp. 2017, but the same language appears in the previous version, effective from January 1, 2014 to August 27, 2017.

by the Worker's Compensation Law at all times regardless of the circumstances of the injury"). Rather, courts have found claimants eligible for workers' compensation benefits on several occasions when an officer is injured or killed even while technically off duty. See Spieler, 62 S.W.3d at 458-59 (affirming award of benefits where off-duty officer stopped at scene of motor vehicle accident to check on passengers, found possible injuries, used cell phone to call 911 for medical and police assistance, and was injured by passing car while standing in street at scene); Mann v. City of Pacific, 860 S.W.2d 12, 16-17 (Mo. App. E.D. 1993) (awarding benefits where officer on vacation volunteered assistance to officers on duty during approach of coming storm and was injured while refueling his personal vehicle, which was equipped with emergency police equipment, before returning to police station); Jordan, 699 S.W.2d at 127 (awarding benefits where off-duty officer was killed during commission of a felony while officer was shopping, when shooter saw officer's badge in his wallet).

The key issue in each of these cases is whether the actions performed by the officers were of the kind they undertook in their roles as officers, as in Spieler and Mann, or if the officers were killed in a particular situation by virtue of being officers, as in Jordan. Cf. King v. City of Clinton, 343 S.W.2d 185, 187-88 (Mo. App. 1961) (affirming award of benefits where officer in uniform, including service revolver as required by police department, tripped while leaving home to report for duty, resulting in accidental discharge of service revolver, injuring him). In contrast, when an officer is not performing law enforcement duties, even if in uniform, an officer's injury is likely not compensable. See Kansas City, Mo. Police Dep't v. Bradshaw, 606 S.W.2d 227, 232-33 (Mo. App. W.D. 1980) (affirming denial of benefits where officer was killed in car accident on his way to

8

his second job as security officer because "at the time of the accident he was not involved in any law enforcement duties").

Here, it is undisputed that Chief Newman was on the dock in Crystal City loading packages into a UPS delivery truck. While we note that Chief Newman would have been on call as police chief even during this time, we do not agree with the Estate that therefore Chief Newman was in the active performance of his duties as police chief at all times, without limitation. Such a holding would expand liability of the LDC Fund beyond what the legislature intended, which is evident from the plain language of Section 287.243(5),[9] as well as the title of the Act, which contemplates compensation for the families of those killed "in the line of duty."

No reader should construe this opinion to diminish the service of Chief Newman as police chief and as a law enforcement officer during his lifetime, or the immense loss suffered by the survivors of Chief Newman and the citizens of the City of Leadwood. Unfortunately, the plain and unambiguous language of Section 287.243.2(5) as drafted by the legislature requires that Chief Newman was engaged "in the active performance of his duties" as police chief when he suffered a fatal heart attack. Because the act of loading delivery trucks at UPS does not constitute the active performance of his police duties, we find the Estate is not entitled to benefits from the LDC Fund.

Conclusion

---

[9] The Estate argues that Section 287.243 is a remedial statute which we must therefore construe liberally. The Estate argues that strict construction of the Workers' Compensation Law, mandated in Section 287.800, does not apply to the LDC Act, by virtue of Section 287.243.9 ("The provisions of this section unless specified, shall not be subject to the other provisions of this chapter"). We need not reach this issue. "Courts resort to rules of liberal or strict construction . . . only when a statute is ambiguous." Peters v. Wady Indus., Inc., 489 S.W.3d 784, 792 n.6 (Mo. banc 2016) (discussing effect of Section 287.800 on co-employee liability under the Missouri Workers' Compensation Law). Moreover, even "[l]iberal construction does not give courts license to extend a statute beyond its plain terms." The language of Section 287.243.2(5) is unambiguous and does not entitle the Estate to benefits in the present case.

The Commission's denial of benefits is supported by sufficient competent evidence in the record.  We affirm.

_____
Gary M. Gaertner, Jr., Judge

James M. Dowd, P.J. and
Robin Ransom, J.,concur.