Donna Sue **DILLARD**, Tony A. Dillard, **Claimants-Respondents,**

v.

**CITY OF ST. LOUIS,** **Employer-Appellant.**

Nos. 48352, 48365.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 26, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 13, 1985.

Application to Transfer Denied April 2, 1985.

**920**

Robert H. Dierker, Jr., Associate City Counselor, St. Louis, for employee-appellant.

Claude Hanks, Leonard Yocum, Creve Coeur, for claimants-respondents.

PUDLOWSKI, Presiding Judge.

The widow and six year old child of Russell Dillard filed a claim for death benefits arising out of his death. The claim was tried before an administrative law judge who found in favor of employer. The claimants filed an application for review to the Labor and Industrial Relations Commission which reversed the administrative law judge and awarded death benefits. Employer appeals. Attorneys for the claimants have filed a cross appeal relating to the award of attorney's fees. We affirm.

1. They were required to locate all objects within

The Commission found that on June 25, 1981, the decedent was employed by the City of St. Louis as a city surveyor. The decedent, Donald Rogers, and Mark Glasby comprised a survey crew and were performing work surveys[1] on Lemp Street located in the City of St. Louis. At approximately 1:00 p.m., the three men were sitting in a van parked on Lemp which they used for their field surveys. After decedent finished his lunch he left the van with a drafting pencil in his hand and commenced performing survey work.

While deceased was standing in Lemp street, performing his survey work, a Cadillac drove by narrowly missing him. Immediately words were exchanged between the deceased and the driver of the Cadillac. The Cadillac stopped and further words were exchanged. The driver then proceeded down the street continuing to exchange words with decedent. He then stopped his car for a second time, got out and started walking toward the deceased. The deceased began walking toward the driver. The two men confronted each other close to the rear end of the car. The driver suddenly swung at the deceased with a knife stabbing him in the chest and then struck him in the jaw. The driver then removed his rear license plate threw it in the back seat of the car and drove off. Deceased's two co-workers ran to his aid at which point deceased stated, "that mother fucker stabbed me in the heart." Decedent died en route to the hospital.

Based upon these facts, the Commission found the death of the decedent was a compensable accident as defined in Section 287.120.1 because his death occurred while he was in the course of his employment and it was caused by the unprovoked assault against him by an unknown assailant. The Commission further awarded claimant's attorney the sum of $12,000.00 as and for attorney's fees.

We must determine if the award of the Commission is supported by compe-

the city right-of-way on Lemp Street.

tent and substantial evidence on the whole record. All of the evidence and legitimate inferences must be viewed in a light most favorable to the award. *Blair v. Associated Wholesale Grocers Inc.,* 593 S.W.2d 650, 652 (Mo.App.1980).

On appeal, employer contends the award is unsupported by competent and substantial evidence because the undisputed facts reveal the fatal assault on the employer was provoked within the meaning of Section 287.120.1 RSMo 1978.

Section 287.120.1 provides:

Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The term **"accident"** as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.

In *Person v. Scullin Steel Co.,* 523 S.W.2d 801, 803–04 (Mo. banc 1975), the Supreme Court quoting from *Liebman v. Colonial Baking Co.,* 391 S.W.2d 948, 951 (Mo.App. 1965) stated as follows:

The assault doctrine has been fully developed in Missouri .... Assaults divide conveniently into three classes....

1st: Those which are invited by the dangerous nature of the employee's duties, or by the dangerous environment in which he is required to perform them, or are the outgrowth of frictions generated by the work itself, but which in either event are invariably revealed to be the result of some risk directly attributable to the employment. Injuries resulting from assaults of that character are compensable in Missouri ....

2nd: Those committed in the course of private quarrels that are purely personal to the participants. Injuries resulting from assaults of that character are noncompensable in Missouri....

3rd: Irrational, unexplained or, accidental assaults of so-called 'neutral' origin, which, although they occur 'in the course of' the victim's employment cannot be attributed to it on any more rational basis than the employment afforded a convenient occasion for the attack to take place.

■ Prior to 1969, cases in the third category were non-compensable. *Kelley v. Sohio Chemical Co.,* 392 S.W.2d 255, 256–7 (Mo. banc 1965). In 1969, the statute was amended to define accident to include an unprovoked assault on an employee. Its obvious intendment was to make cases in the third class compensable. *Person v. Scullin Steel Co.,* 523 S.W.2d 801, 804 (Mo. banc 1965). In *Person,* the Supreme Court also held that unprovoked assaults committed in the course of private quarrels were still non-compensable.

■ A claimant's accident must both arise out of and in the course of employment. Section 287.120.1 RSMo 1978. An injury "arises in the course of" employment if it occurs within the period of employment at a place where the employee may reasonably be, while engaged in the furtherance of the employer's business or if he is injured in doing an act reasonably incidental to the performance of his duties, of which his employer might reasonably have knowledge or reasonably anticipate. *Daniels v. Krey Packing Co.,* 346 S.W.2d 78, 83 (Mo.1961); *Zahn v. Associated Dry Goods,* 655 S.W.2d 769, 772 (Mo.App.1983). An injury "arises out of" the employment if (1) the injury results from a natural and reasonable incident of the employment, a rational consequence of some hazard connected therewith or a risk reasonably inherent in the particular conditions of the employment and (2) if the injury is the result of a risk peculiar to the employment or enhanced thereby. *Zahn v. Associated*

*Dry Goods Corp.*, 655 S.W.2d 769, 773 (Mo.App.1983). The precise injury need not have been anticipated so long as there was a rational consequence of some hazard connected with employment. *Toole v. Bechtel Corp.*, 291 S.W.2d 874, 880 (Mo.1956).

In *Allen v. Dorothy's Laundry and Dry Cleaning Co.*, 523 S.W.2d 874, 878–79 (Mo. App.1975), the court held if an employee "in the course of employment," is the victim of a "neutral," unprovoked assault then as a matter of law the assault arises "out of" the employment. In the case at bar, the Commission found the assault arose in the course of employment, was unprovoked and therefore compensable. The Commission made no finding that the injury "arose out of" the employment apparently concluding that finding the assault was unprovoked was sufficient in light of *Allen.*

The Commission's finding that the injury arose "in the course of" employment is not challenged by the employer and is supported by the record. Dillard was on the job site during work hours. His action in approaching the driver of the car who had stopped under these circumstances was incidental to the performance of his duties and could reasonably have been anticipated by his employer.

■■■ The Commission apparently concluded that the assault fit into the third category of cases—those of "neutral, unexplained" origin and after determining that the assault was unprovoked concluded it was compensable. We do not believe this assault was of "neutral" origin. Assaults of neutral origin refer to assaults which "although they occur in the course of the victim's employment, cannot be attributed to it on any more rational basis than the employment afforded a convenient occasion for the attack to take place." *Person*, 523 S.W.2d at 804. Cases in which the assault has been classified of neutral origin include: *Zahn v. Associated Dry Goods*, 655 S.W.2d 769, 772 (Mo.App.1983) (employee

assaulted and raped in employer's parking garage); *Allen v. Dorothy's Laundry and Dry Cleaning Co.*, 523 S.W.2d 874 (Mo. App.1975) (employee shot by berserk rifleman for no apparent reason); *Ries v. De-Bord Plumbing Co.*, 186 S.W.2d 488 (Mo. App.1945) (employee assaulted by a stranger with no apparent motive); *Kelley v. Sohio Chemical Co.*, 392 S.W.2d 255 (Mo. banc 1965) (employee was struck from behind in her office for no discoverable reason); *Liebman v. Colonial Baking Co.*, 391 S.W.2d 948, 951 (Mo.App.1965) (employee assaulted from behind by drunken stranger without motive). This assault does not resemble the "neutral" assaults recognized above. This assault was directly the result of a confrontation which arose from the manner in which the employee had been performing his duties (standing in the street). The employment did not merely afford a convenient occasion for the attack to take place.

■■■ Where the facts are not significantly disputed, the issue of whether decedent's death arose out of the employment is a question of law. *Blatter v. Missouri Department of Social Services*, 655 S.W.2d 819 (Mo.App.1983). We believe the evidence established as a matter of law that the injury "arose out of" the employment. The assault on decedent was the outgrowth of friction generated on the job and was a rational consequence of a hazard of working in the streets. The risk of being hit by an automobile or barely escaping such a collision was a risk inherent in decedent's job. Decedent's co-worker testified:

These things occur in general ... some cars yield to pedestrians, other cars don't .... That's a common occurrence when working in the street on a regular basis that cars don't respect the position of workers in the street, even [when the employee is] vested some of them will come close to hitting them.

If assailant's automobile had hit and killed decedent while he was standing in

the street, the accident would clearly have "arisen out of" the employment. See *Blatter v. Mo. Dept. of Social Services*, 655 S.W.2d 819 (Mo.App.1983); *Wyatt v. Kansas City Art Institute*, 229 Mo.App. 1166, 88 S.W.2d 210, 211 (1935). Moreover, it has been held that an assault upon an employee which arises from a confrontation with another driver after a vehicular accident arises "out of" the employment. *Sanders v. Jarka Corp.*, 1 N.J. 36, 61 A.2d 641 (1948). In *Sanders*, the court quoting *Geltman v. Reliable Linen & Supply Co.*, 25 A.2d 894, 897 (N.J.App.1942) stated:

> The peril was one inseparable from the line of duty.... The accident was not the consequence of a purely personal quarrel unrelated to the employment.... Hot tempered controversies respecting the management of motor vehicles on our busy thoroughfares are not at all uncommon. What happened was an accident directly attributable to a risk of the highway to which the employment exposed the victim.

In *Geltman*, the employee was forced off the road and assaulted by a motorist "in resentment of the manner in which [the employee] had driven his automobile." 25 A.2d at 897. *See Augelli v. Rolans Credit Clothing Store*, 33 N.J.Super. 146, 109 A.2d 439 (N.J.App.1954) (employee assaulted by driver of another car for blowing his horn). The fact that this involved a pedestrian—driver confrontation does not make the observation noted in *Geltman* any less appropriate. This assault was the outgrowth of friction generated by the performance of the decedent's duties. It arose out of the decedent's employment.

■ The Commission found that the "assault did not originate from a private quarrel." We believe there was substantial evidence to support such a finding. Here, the altercation clearly arose from frictions generated by the work related duties of the decedent unlike the assaults in *Person v. Scullin Steel Co.*, 523 S.W.2d 801 (Mo. banc 1975) (quarrel and assault arose out of failure of claimant to bring fellow employee to work); *Freeman v. Callow*, 525 S.W.2d 371 (Mo.App.1975) (assault arose out of a quarrel over attacker's wife); *Foster v. Aines Farm Dairy Co.*, 263 S.W.2d 421 (Mo.1953) (quarrel over personal, family and business matters, unconnected with employment. In the instant case there was no evidence the unknown assailant and the decedent knew each other; had any prior disputes or their paths had ever crossed before this unfortunate encounter.

■ Employer argues that the decedent provoked the assault and challenges the Commission's finding that he did not. Even though we have concluded the "neutral," unprovoked assault situation is not presented in this case, nonetheless, an aggressor is not entitled to compensation for injuries caused by his own threats and demonstration of assault upon another. *Staten v. Long-Turner Construction Co.*, 185 S.W.2d 375 (Mo.App.1945); *Stephens v. Spuck Iron & Foundry Co.*, 214 S.W.2d 534 (Mo.1948). In *Staten*, the court held the claimant was not entitled to compensation because he had been the aggressor. There the evidence established:

> [Claimant] said: "If you try and stop me, I'll hit you in the chin, using a vile and unprintable epithet; that he then advanced towards Campbell in a threatening manner, shook his fist under his nose, and threatened to bust him in the jaw; Campbell then picked up a wrench and struck [claimant] which caused his injury." 185 S.W.2d at 379.

In *Stephens v. Spuck Iron & Foundry Co.*, 214 S.W.2d 534, 539 (Mo.1948), the court affirmed the Commission's finding that the assault on claimant by a fellow employee occurred in the course of and arose out of the employment, even though claimant had directed profanity at his attacker. The court stated, "In the present case it cannot be said as a matter of law that [claimant] was the aggressor. He used offensive language it is true, but 'language or epithets, however offensive will not justify or excuse an assault.'"

924

In the case at bar, while the confrontation was described as "heated," the evidence establishes that decedent was unarmed and made no threatening gestures. The assault upon him was therefore unprovoked as a matter of law.

In employer's second point, it alleges the Commission erred in shifting the burden of proof to employer. We do not so read the Commission's findings. *See Macalik v. Planters Realty Co.*, 144 S.W.2d 158 (Mo. App.1940).

In claimant's cross appeal, the attorneys allege that the award of $12,000.00 for attorney's fees was not a fair and reasonable allowance for services; that it was so unreasonable and inadequate that it constituted an abuse of discretion. Section 287.260 RSMo 1978 provides that, "[a]ll attorney's fees for services ... shall be subject to regulation by the division or commission and shall be limited to such charges as are fair and reasonable." The Commission's decision may be reversed only if it can be said as a matter of law that the allowance was so inadequate and so unreasonable to constitute an abuse of discretion. *Sanderson v. Producer's Commission Assn.*, 241 S.W.2d 273 (Mo.App. 1951).

The record establishes that claimant initially retained attorneys on a 25% contingent fee basis. After the referee ruled in favor of the employer, claimant agreed to compensate attorneys on the basis of a 50% contingent fee contract, but subjected the agreement to approval by the Commission. The Commission awarded $12,000.00 in attorney's fees which attorneys assert is inadequate.

Attorneys have cited *In re Estate of Petzold*, 663 S.W.2d 400 (Mo.App.1983) in support of their contention that the Commission abused its discretion and should have granted a 50% attorney's fee. In *Petzold*, this court held that the probate court erred in not allowing the full amount of attorney's fees to which the legatees had consented. We find *Petzold* inapplicable to the facts of this case. In *Petzold*, the court emphasized that the consent was given by adult legatees who had received independent legal advice. In the case at bar, the interests of a minor child are at stake and no independent legal advice was sought or received. More importantly, we find nothing in *Petzold*, a probate case, which would make its holding applicable to a workmen's compensation proceeding.

We conclude the award of attorney's fees is not inadequate. This was not an exceptionally complex worker's compensation case. There was no medical testimony necessary. Claimants only presented three witnesses. Wife had to testify to her marriage and support by the decedent. Decedent's two co-workers also testified. Whether claimants were entitled to benefits was essentially a question of law. We have carefully examined the entire record and find the Commission did not abuse its discretion.

Affirmed.

GAERTNER and KAROHL, JJ., concur.