Donald J. ANDERSON,
Employee-Appellant,

v.

EMERSON ELECTRIC COMPANY,
Employer-Respondent.

and

Second Injury Fund, State of Missouri.

No. 49211.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 20, 1985.
Rehearing Denied Oct. 3, 1985.

Robert J. Keefe, Randall, Keefe & Griffiths, St. Louis, for employee-appellant.

Robert W. Herr, Luke & Cunliff, St. Louis, for employer-respondent.

CARL R. GAERTNER, Judge.

Employee appeals the Workers' Compensation award of the Labor & Industrial Relations Commission. We affirm.

Donald J. Anderson was employed as a senior test engineer with Emerson Electric Company. On October 2, 1982 while lifting a box of books he felt something pull in his back. The next morning when he sneezed his lower back pain intensified. Three or four days later he notified his supervisor of the incident. Nine days after the accident he reported to the dispensary where he was referred to an orthopedic surgeon, Dr. Frank Petrovitch, who examined him. He received other treatment from chiropractors. He took off three, four or five days from work sporadically and left work early on occasions because of his back. In March of 1983, he left his employment with Emerson, giving as his reason a desire to join his wife, a licensed chiropractor in California.

In 1975, while in the United States Navy, Anderson underwent triple bypass surgery because of angina pain. In 1976, he retired from the Navy after twenty years of service. He testified that the Navy rated his disability because of the heart condition at 60%, and that because of this disability rating his retirement pay was not increased but was made non-taxable. He was on social security disability for approximately one year after this retirement.

The medical evidence adduced at the hearing consisted of the deposition testimony of Dr. Joseph Morrow, an osteopath, who examined Anderson on one occasion, and Dr. Petrovitch. Dr. Morrow examined Anderson on June 22, 1983. He testified that all of the tests he performed upon Anderson were negative except for some subjective complaints of pain. Based upon this and the history as related to him he concluded that Anderson's permanent partial disability by reason of the injury amounted to 35% of the body as a whole. Based upon Anderson's statement to him that his disability by reason of his heart condition was 80%, Morrow concluded that the total of the two disabilities, exceeding 100%, caused him to be permanently and totally disabled. He made no attempt to determine the extent of any disability resulting from the heart condition, but merely accepted Anderson's statement.

Dr. Petrovitch testified that when he examined Anderson a few weeks after the incident of October 2, 1982, he found mild muscle spasm in the right lumbar area and x-rays disclosed a narrowing of the disc space at L 5–S1. His opinion then was that Anderson had an irritation of the S 1 nerve root due to a bulging disc. Because Anderson specifically denied any injury, he concluded the patient's problem was obesity and that weight reduction and exercise would alleviate his symptoms. He reported that Anderson had no permanent disability whatsoever regarding his back. He reexamined Anderson on the date of the hearing, November 28, 1983, at which time a physical and neurological examination was totally negative. He concluded that Anderson had no disability at all.

Based on this evidence the administrative hearing judge found Anderson suffered from 25% disability due to his back injury, 45% disability due to his heart condition and a combined disability of 85%, thereby imposing liability for the additional disability upon the Second Injury Fund. Anderson and Emerson both applied for review to the Industrial Relations Commission.

The Commission found Anderson sustained a compensable injury on October 2, 1982 resulting in permanent partial disability of 10% of the body as a whole. Additionally, the Commission found Anderson had failed to establish by competent evidence any disability resulting from his cardiac condition. Further, the Commission held that he failed to prove that the combination of the two disabilities was greater than the sum of the two disabilities considered independently. Accordingly, it made no award to Anderson against the Second Injury Fund.

Anderson appealed to this court originally contesting both the reduction of the award for permanent partial disability against Emerson and the reversal of the award against the Second Injury Fund. He subsequently abandoned the appeal as to Emerson, conceding that the conclusion of the Commission as to permanent partial disability is supported by the evidence. Accordingly, we address only the issue regarding the liability of the Second Injury Fund.

■ Our review of findings by the Industrial Labor & Relations Commission is limited by § 287.495 RSMo Supp.1984. We must affirm the Commission's award and findings if supported by substantial and competent evidence on the whole record. *Dillard v. City of St. Louis,* 685 S.W.2d 918, 921 (Mo.App.1984). "All of the evidence and legitimate inferences must be viewed in a light most favorable to the award." *Id.* The Commission is free to disbelieve the testimony of any witness even if there is no contrary or impeaching evidence. *Fowler v. Monarch Plastics,* 684 S.W.2d 429, 430 (Mo.App.1984). The Commission is the judge of witnesses' credibili-

ty and this court will not substitute its view of the facts for those of the Commission. *Baldridge v. Inter-River Drainage District,* 645 S.W.2d 139, 140 (Mo.App.1982).

Guided by these principles, we find the Commission's decision that there was no liability on the part of the Second Injury Fund was not against the substantial weight of the evidence. Under § 287.220 RSMo Supp.1984, liability may be imposed upon the Second Injury Fund in two instances: (1) when the combination of a preexisting disability with a compensable disability results in a greater disability than the sum of the two disabilities considered independently, the Second Injury Fund is liable for the difference between the sum of the two disabilities and the disability resulting from their combination, or, (2) if the compensable disability is partial but when combined with the preexisting disability results in total permanent disability, the Second Injury Fund is liable for the compensation due the employee for permanent total disability, but only after the employer has paid the compensation due the employee on account of the disability resulting from the compensable injury.

■ At the hearing, Anderson's evidence was entirely directed toward invoking the second of these two provisions. Dr. Morrow testified that since Anderson said his preexisting cardiac disability was 80%, and the doctor concluded that his back related disability was 35%, the total was in excess of 100% and therefore Anderson was totally and permanently disabled. The Commission and the administrative hearing judge both rejected this testimony. The Commission is entitled to disbelieve the testimony of any witness even though no contradictory or impeaching evidence appears. *Fowler v. Monarch Plastics,* 684 S.W.2d at 430. By accepting as final the award for permanent partial disability against Emerson, Anderson has abandoned his claim of total permanent disability and, perforce, limited his claim against the Second Injury Fund to a contention of liability based on the synergistic effect of the combination of the two partial disabilities. The record is

devoid of any evidence that the combined effect of the cardiac condition and the back injury was greater than the sum of the disabilities resulting from each. Dr. Morrow merely added the two percentages but gave no consideration to an additional degree of disability resulting from their combination. Dr. Petrovitch was not asked about and did not express any opinion regarding the extent of disability resulting from the cardiac condition. The finding of the Commission that Anderson failed to prove a disability greater than the sum of the two disabilities is not contrary to the greater weight of the evidence.

Moreover, the Commission properly concluded that Anderson failed to establish by competent evidence what degree of disability due to his heart condition existed at the time of his compensable injury. The only evidence relating to cardiac disability was Anderson's testimony that the Navy gave him a 60% disability at the time of his discharge, six years before the accident. Dr. Morrow testified Anderson told him that rating was 80%. As noted by the Commission, even if it accepted this conflicting evidence, it would not establish the degree of preexisting disability on the date of the accident. This is especially true where Anderson's own evidence showed he had not consulted a cardiologist since his discharge from the Navy, that beginning one year after his discharge he had been steadily employed and his heart condition had no affect upon his job, that he was taking no medication for his heart condition, that at the time of the accident his activities were minimally restricted merely to the avoidance of isometric exercises.

The preexisting disability which invokes liability of the Second Injury Fund must be such as to partially disable the claimant from work and impede his labors. *Meilves v. Morris,* 422 S.W.2d 335, 338 (Mo.1968). The prior disability must relate to a disability to work, an industrial disability affecting earning capacity, rather than physical impairment as such. *Jockel v. Robinson,* 484 S.W.2d 227, 230 (Mo.1972); *Wilhite v. Hurd,* 411 S.W.2d 72, 77 (Mo.

1967). The finding of the Commission that Anderson failed to establish such a preexisting disability is amply supported by the evidence.

The award of the Labor & Industrial Relations Commission is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.