Loretta K. JORDAN,
Claimant–Respondent,

v.

FARMERS STATE BANK OF TEXAS
COUNTY, Employer–Appellant,

and

United States Fidelity & Guaranty
Company, Insurer.

Kevin James BYLER, Personal Repre-
sentative for the Estate of James R.
Byler, Claimant–Respondent,

v.

FARMERS STATE BANK OF TEXAS
COUNTY, Employer–Appellant,

and

United States Fidelity & Guaranty
Company, Insurer.

Nos. 16725, 16726.

Missouri Court of Appeals,
Southern District,
Division One.

June 20, 1990.

Rich D. Moore, Kenneth A. Wagoner, Brill, Moore & Wagoner, P.C., West Plains, for claimants-respondents.

Bernard C. Rice, Joseph C. Blanton, Jr., Blanton, Rice, Sidwell & Ottinger, Sikeston, for employer-appellant.

PREWITT, Judge.

Farmers State Bank of Texas County, the employer of Loretta K. Jordan and James R. Byler, appeals from an award of the Labor and Industrial Relations Commission granting workers' compensation benefits for injuries received by the two employees. The question in both appeals is whether the injuries of James R. Byler and Loretta K. Jordan arose out of and in the course of their employment. As the issues presented are almost identical, the appeals were consolidated.[1]

The relevant facts are not in dispute. James R. Byler was the president of the Farmers State Bank of Texas County, Missouri located in Houston, Missouri. Shortly after he arrived for work on April 24, 1986, he received a phone call from a man, who identified himself as Jay Lewis. Lewis had taken Byler's wife hostage at the Bylers' home. Lewis told Byler that he had "five seconds to get out of the bank, go to Raymondville, and pick up a hundred thousand dollars." There is a branch of the Farmers State Bank in Raymondville which is located a few miles from Houston.

Byler told Jordan, the vice president of Farmers State Bank, of the call and asked whether she was going with him to get the money. Jordan decided to accompany Byl-

1. During the course of these proceedings James R. Byler died and his personal representative Kevin James Byler was duly substituted.

er because he had a history of heart problems. They went to Raymondville and got currency and then went to Byler's home. They placed the money where directed and then Lewis, carrying a firearm, made them go to Byler's garage and lie on the floor. Lewis then shot them.[2]

The Farmers State Bank had anticipated the possibilities of robbery or extortion. The bank had Federal Bureau of Investigation agents and other law enforcement officers talk with the bank employees about what they should do in the event either occurred. If a person was being held hostage the bank employees were to begin preparation for delivery of the sum demanded and to notify another bank official of the threat and the employee's intentions regarding it. They were advised to do as they were told and not to try to be heroic, to follow the procedures and guidelines that they were given, both orally and in writing.

In this proceeding Byler and Jordan sought benefits under the Workers' Compensation Law for the injuries received from the shootings. The Commission, adopting the findings of Chief Administrative Law Judge James H. Wesley II, on the issues here, found that the injuries arose out of and in the course of their employment. Review is of the Commission's Award. *Wilhite v. Hurd,* 411 S.W.2d 72, 76 (Mo.1967).

This court's review under § 287.495.1 includes questions of law. If the facts are not significantly in dispute the question of whether the injury arose out of and in the course of employment is a matter of law. *Jordan v. St. Louis County Police Dept.,* 699 S.W.2d 124, 125 (Mo.App.1985); *Dillard v. City of St. Louis,* 685 S.W.2d 918, 922 (Mo.App.1984).

■ In interpreting the workers' compensation law, all doubts are resolved in favor of the employee. *Page v. Green,* 686 S.W.2d 528, 530 (Mo.App.1985). The mandate for liberal construction of the Work-

ers' Compensation Act set forth in § 287.800, RSMo 1986, means that benefits should be extended to the largest possible class of workers and the denial of benefits to the smallest possible class. *Id.* at 531. "One of the purposes of the Workers' Compensation Act is to relieve the burden of workers incapacitated by injuries from the public and place the burden upon industry." *Id* at 530. See also *Jordan,* 699 S.W.2d at 125 (any doubt under the Workers' Compensation Law as to an employee's right to compensation must be resolved in favor of the employee).

For an employer to be liable under the Workers' Compensation Law an employee's injuries must occur by accident "arising out of and in the course of" employment. § 287.120.1, RSMo 1986.[3] "Personal injuries arising out of and in the course of such employment" does not cover workers "except while engaged in or about the premises where their duties are being performed, or where their services require their presence as a part of such service." § 287.020.5, RSMo 1986.

■ The terms "out of" and "in the course of" are separate tests which must be met for an injury to be compensable. *Davison v. Florsheim Shoe Co.,* 750 S.W.2d 481, 483 (Mo.App.1988); *Page,* 686 S.W.2d at 532. Case law has defined the phrase "arising out of" to mean the injury is a natural and reasonable incident of the employment; there must be a causal connection between the nature of the duties or conditions the employee is required to perform and the resulting injury. "[I]n the course of" is occurring within the period of employment at a place where the employee may reasonably be, while the person is reasonably fulfilling the duties of employment or engaged in doing something incidental thereto. *Parrish v. Kansas City Security Service,* 682 S.W.2d 20, 26 (Mo.App.1984); *Davison,* supra 750 S.W.2d at 483.

---

2. Later Byler learned that "Jay Lewis" was an alias. "Roy White" is the man's true name. This opinion refers to him as "Jay Lewis".

3. "[A]ccident" includes "injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." § 287.120.1, RSMo 1986.

Other cases have worded their analyses of these concepts slightly differently. "An injury 'arises out of' the employment if (1) the injury results from a natural and reasonable incident of the employment, a rational consequence of some hazard connected therewith or a risk reasonably inherent in the particular conditions of the employment and (2) if the injury is the result of a risk peculiar to the employment or enhanced thereby." *Dillard,* 685 S.W.2d at 921. "An injury 'arises in the course of' employment if it occurs within the period of employment at a place where the employee may reasonably be, while engaged in the furtherance of the employer's business or if he is injured in doing an act reasonably incidental to the performance of his duties, of which his employer might reasonably have knowledge or reasonably anticipate." *Id.*

Each case involving whether an accident arose out of and in the course of employment must be decided on its own facts and circumstances, by applying the relevant principles and not by reference to some formula, or by attempting to group compensation problems by fact categories. *Page,* 686 S.W.2d at 533.

■ Although conceding that the bank having access to large amounts of currency increased the likelihood that Mrs. Byler might be kidnapped, the bank argues that assaults on Byler and Jordan did not arise "out of" their employment and the assaults "were distantly removed in the chain of causation from the presence of money at the bank." It argues that once they arrived at the Byler residence "money was not a contributing cause of their injuries. The assaults occurred because Byler and Jordan were present at a crime scene and could possibly identify the perpetrator". The fallacy in this argument is that they were only present and in the position to identify the perpetrator because they were following guidelines given them in delivering currency which they had access to because of their employment.

The injuries arose out of Jordan's and Byler's employment. There is the hazard that an employee or a member of an em-ployee's family might be held hostage and that currency may have to be delivered to the extortionist at great danger to the employee. The knowledge that banks often have large amounts of currency and that they are sometimes preyed upon by those seeking money through illegal means makes it a natural and a reasonable incident of employment at a bank that an employee could be shot and that shooting would be a rational consequence of the hazard of such employment.

The bank contends that the injuries to Jordan and Byler did not arise "in the course of" employment as it did not occur at the bank nor at any place "where any of the Banks' business ever transpired." They say that the employees were not fulfilling the duties of their employment at the time of the assault but were attempting to secure Mrs. Byler's release.

The injuries were "in the course of" their employment. They occurred during the period of employment at the house of a bank employee whose spouse was being held hostage. In complying with Lewis' instructions Byler was where his employer had instructed him to be. Under the circumstances it was reasonable for Jordan to go with Byler. Indeed, it is doubtful that she would have wanted to expose herself to such danger if it had not been required or expected of her in her employment. It was reasonable for the employees to be there and they were reasonably fulfilling the duties of their employment.

The award is affirmed.

CROW, P.J., and PARRISH, J., concur.