**David LOEPKE, Respondent,**

**v.**

**OPIES TRANSPORT, INC., Appellant.**

**No. WD 53232.**

Missouri Court of Appeals,
Western District.

May 27, 1997.

Robert Angstead, Jefferson City, for Appellant.

Susan M. Turner, Jefferson City, for Respondent.

SPINDEN, Judge.

Opies Transport, Inc., appeals the Labor and Industrial Relations Commission's award of temporary total disability and medical benefits to David Loepke. Opies Transport contends that the commission erred in its award because (1) the award for Loepke's lower back injury conflicted with the overwhelming weight of the evidence; (2) Loepke did not notify his employer of his lower back injury as required by § 287.420, RSMo 1994; (3) Loepke provoked the assault which caused his injuries, and (4) the commission did not make unequivocal findings of fact as required by § 287.460.1, RSMo 1994. We affirm.

Loepke was a truck driver for Opies Transport. On August 26, 1994, another truck driver assaulted Loepke at a truck stop in Murfreesboro, Tennessee, after Loepke's unattended truck rolled into the other driver's truck. The truck driver hit Loepke in the head, neck and back. As a result of his injuries, Loepke underwent neck surgery. He filed a workers' compensation claim alleging injury to his head, neck, right eye, left leg and left arm. Opies Transport paid all medical and temporary total disability benefits relating to Loepke's cervical spine injury for the August 26 assault.

Loepke underwent physical therapy to help him recuperate from his neck surgery. During this therapy after he returned to work, Loepke injured his lower back. On October 17, 1995, he filed another workers' compensation claim for his lower back injury. In his claim, he said:

> While in the course and scope of employment as an over the road truck driver the employee began to experience increasing low back pain. Employee has experienced increased neck and arm pain as the result of holding himself with his arm on the steering wheel to keep from bouncing on his lower back.

On January 29, 1996, an administrative law judge held a hearing to consider Loepke's claims. The administrative law judge announced that the issues she was addressing were:

> 1) the causation of the low back complaints, 2) whether the alleged injury to the low back arose in the course and scope of the employment, 3) whether appropriate notice was provided, 4) the application of a penalty to benefits due to a safety violation, 5) the employer/insurer's liability for past and further temporary total disability benefits, and 6) the employer/insurer's liability for past and further medical treatment.

The administrative law judge concluded that Loepke's lower back complaints arose out of, and in the course of, his employment and were caused by his physical therapy and his return to work after the assault. The administrative law judge found Opies Transport

liable for past and future temporary total disability benefits and medical benefits.

Opies Transport appealed that decision to the commission which affirmed and adopted the administrative law judge's award. Opies Transport appeals.

■ In its first point on appeal, Opies Transport contends that the commission erred in granting Loepke's claim for temporary disability benefits and medical expenses in regard to his lower back pains. We disagree.

■ In determining whether the commission could have reasonably made its award, we examine the record, together with all reasonable inferences to be drawn from the evidence, in the light most favorable to the commission's findings and award to determine whether they are supported by competent and substantial evidence. If the findings and award are supported by competent and substantial evidence, we must determine whether the commission's findings and award were nevertheless clearly contrary to the overwhelming weight of the evidence contained in the whole record before the commission. *Davis v. Research Medical Center,* 903 S.W.2d 557, 565 (Mo.App.1995). Opies Transport concedes that competent and substantial evidence supported the commission's award, but it contends that the commission's award fails the second prong of the analysis. It contends that the award conflicts with the overwhelming weight of the evidence.

Opies Transport focuses on the testimony of two physicians, John Hart and Gary Baskett, who examined Loepke after the assault. Both testified that the assault did not cause Loepke's lower back injury and that Loepke did not even complain about lower back problems during their examinations of him.

The commission did not focus on the assault as the cause of Loepke's lower back problems. Instead, it found that Loepke's physical therapy and return to work after the assault caused his lower back problems. The commission said:

The low back complaints of [Loepke] are caused by ... Loepke's therapy and return to his employment after his August 26, 1994 accident and injury and treatment

for his cervical spine symptoms. The medical evidence presented is consistent with Mr. Loepke's increased complaints of low back pain during the months following his August 26, 1994 accident and injury, becoming significantly more severe in March of 1995 and thereafter. Dr. Cunningham's testimony regarding the effect of increased activity on what were initially unremarkable low back complaints is convincing evidence of the effect of Mr. Loepke's continued therapy for the August 26, 1994 accident and injury and his re-employment with Opie's Transport on Mr. Loepke's back.

Mr. Loepke's low back complaints arose out of and in the course of his employment. To the extent that Mr. Loepke's current complaints result from the increased activity caused by the physical therapy necessitated by the August 26, 1994 assault, the assault clearly arose out of and in the course of Mr. Loepke's work where the incident which provoked the assault was Mr. Loepke's unattended truck rolling into and damaging the assailant's truck at a truck stop. There was no evidence that there was personal animosity between Mr. Loepke and his assailant.

Both Dr. Hart and Dr. Baskett testified to Mr. Loepke's complaints of leg pain during their treatment of Mr. Loepke, although both doctors attributed the leg pain to Mr. Loepke's cervical injuries. Thus, the record supports a finding that Mr. Loepke made complaints consistent with a low back injury within weeks of his accident. Furthermore, neither Dr. Hart nor Dr. Baskett testified to the effect of Mr. Loepke's therapy or his continued work for Opie's Transport on Mr. Loepke's low back; instead, their opinions focused solely on the causal relationship between the original August 1994 accident and Mr. Loepke's low back injury.

Robert Cunningham, an orthopedic surgeon, examined Loepke for the first time on December 12, 1994. Loepke underwent a myelogram and a CAT scan of both the lumbar and cervical areas. Tests of the lumbar area showed that Loepke had a bulging disc at L4–5, a slight bulging disc at L2–3

and L3–4, and degenerative disc at L4–5 and L5–S1. Tests of the cervical spine, however, were not Cunningham's primary concern. Cunningham said, "I felt like that his neck was his main problem, that if it were just his neck and I could rehab his low back, that perhaps we could get him back to work and get him going."

In March 1995, Loepke continued to complain about lower back pain, and Cunningham ordered a steroid epidural injection to help relieve the pain. In April 1995, Cunningham recommended that Loepke start physical therapy, and in May 1995, Cunningham gave Loepke another steroid epidural injection to help the lower back pain. On May 31, 1995, Cunningham released Loepke to return to work without limiting his activities and instructed him to continue with physical therapy once a week for six weeks. Cunningham saw Loepke again in June, and Loepke continued to complain about leg and lower back pain. Cunningham told Loepke to limit his truck driving to shorter trips.

In September 1995, Cunningham saw Loepke again. Loepke told him that he had started driving long trips and that his back was hurting too much for him to "get by." Loepke said that he was not sleeping at night and that his arms ached because he used them to support his weight while grasping the steering wheel to keep pressure off his lower back. Cunningham ordered another MRI, myelogram and CAT scan. Those tests revealed that Loepke had a diffuse disc bulge at L4–5 and a central protrusion at L4–5 and L5–S1. They showed changes in Loepke's lumbar spine that did not exist when Loepke underwent the tests in December 1994.

Cunningham repeated the myelogram and CAT scan on October 2, 1995. These tests revealed either a bulging annulus or a disc protrusion. Because Cunningham had already tried medication, injections, physical therapy and keeping Loepke on light duty at work, he concluded that surgery was a possibility. He said that Loepke might need a two-level posterior decompression and fusion and a bone graft. Cunningham told Loepke not to return to work.

Cunningham said that when he released Loepke to return to his employment in May 1995 he did not have any reason to believe that Loepke needed surgery on his lower back. He began to consider surgery only after Loepke's return to work caused increased problems in his back and a change in the condition of his lumbar spine. Cunningham testified:

Q. In your opinion are the changes that you observed on the diagnostic tests in October 1995 related to Mr. Loepke's return to work as an over-the road-driver for Opies?

A. By his history, yes.

Q. And you definitely saw changes that were not there before he began driving again?

A. Yes.

. . . .

Q. Do you have an opinion to a reasonable degree of medical certainty whether the condition as it existed when you saw him in October of 1995 was related to his employment with Opies?

A. It was my opinion that it was related to his employment with Opies, assuming that was still the company he was working for.

Q. Yes. And if surgery is indicated, is it your—do you have an opinion to a reasonable degree of medical certainty that, if he has to have fusion of the lumbar spine, that will be related to the changes that you saw in October 1995?

A. Yes.

. . . .

Q. Absent any evidence of any subsequent injury or any traumatic event to Mr. Loepke's lower back, the fact that his symptoms continued to increase once he returned to work for Opies, is it your opinion—or do you have an opinion whether that bulge that you saw in October 1995 is related to his employment with Opies?

. . . .

A. I think it's related.

Cunningham's testimony, which the administrative law judge and the commission found convincing, provided the competent and substantial evidence to support the commission's

findings and award. The findings and award were not contrary to the overwhelming weight of the evidence before the commission. As the commission noted, neither Hart nor Baskett testified concerning the effect of Loepke's therapy or his continued work for Opies Transport on his lower back. Both physicians focused solely on the causal relationship between the original August 1994 accident and Loepke's lower back injury.

■ To obtain an award for temporary disability and medical aid, the claimant must prove the injury's cause by a reasonable probability. *Downing v. Willamette Industries, Inc.*, 895 S.W.2d 650, 655 (Mo.App. 1995). Cunningham's testimony established the reasonable probability that Loepke's physical therapy and return to work caused his lower back pain. Opies Transport's contention is without merit.

■ In its next point, Opies Transport contends that the commission erred in granting Loepke's claim for temporary disability benefits and all medical expenses because Loepke did not notify his employer of his lower back injury as required by § 287.420. We disagree.

■ Section 287.420 says:

No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the division or the commission finds that there was good cause for failure to give the notice, or that the employer was not prejudiced by failure to receive the notice. No defect or inaccuracy in the notice shall invalidate it unless the commission finds that the employer was in fact misled and prejudiced thereby.

An employer's having actual notice will excuse an employee's failure to make timely, written notice. *Hall v. G.W. Fiberglass, Inc.*, 873 S.W.2d 297, 298 (Mo.App.1994). When a claimant gives his or her employer actual notice of an injury, the claimant has made a *prima facie* case that the employer was not prejudiced by his or her failure to provide written notice, and the burden shifts to the employer to show prejudice. *Patterson v. Engineering Evaluation Inspections, Inc.*, 913 S.W.2d 344, 347 (Mo.App.1995).

Again, Opies Transport concentrates on the assault and asserts that Loepke's claim for compensation from the assault did not mention lower back pain. Loepke's second claim, however, alleged that his over-the-road truck driving caused his lower back pain. Jim Henley, Opies Transport's vice president of safety, testified that he knew of Loepke's back and leg complaints but that he did not associate the complaints with a lower back injury. The commission said, "While Mr. Henley's misunderstanding is certainly plausible, it does not constitute a lack of notification." We agree. Opies Transport had actual notice of Loepke's back injury, and it did not demonstrate that it was prejudiced by the notice given.

■ In its third point, Opies Transport argues that Loepke's failure to set the truck's parking brake provoked the assault; therefore, the assault cannot be found to be an "accident" as defined in § 287.120.1, RSMo 1994. We disagree.

■ Section 287.120.1 says, "The term 'accident' as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." Unprovoked means that the claimant is not the aggressor. "[A]n aggressor is not entitled to compensation for injuries caused by his own threats and demonstration of assault upon another." *Dillard v. City of St. Louis*, 685 S.W.2d 918, 923 (Mo. App.1984). That Loepke did not engage his truck's parking brake does not show that he was the aggressor; however, his not being the aggressor does not, in itself, entitle him to workers' compensation benefits.

■ Missouri courts have recognized three types of assault in workers' compensation cases:

(1) [T]hose invited by the dangerous nature of the employee's duties or environment, or resulting from some risk directly

attributable to the employment; (2) those "committed in the course of private quarrels that are purely personal to the participants"; and (3) "[i]rrational, unexplained or accidental assaults of so-called 'neutral' origin, which although they occur 'in the course of' the victim's employment, cannot be attributed to it on any more rational basis than that the employment afforded a convenient occasion for the attack to take place."

*Thompson v. Delmar Gardens of Chesterfield, Inc.,* 885 S.W.2d 780, 782 (Mo.App.1994)(*quoting Person v. Scullin Steel Company,* 523 S.W.2d 801, 803–04 (Mo. banc 1975)). Only injuries resulting from assaults committed in the course of private quarrels are not compensable under § 287.120. *Scheper v. Hair Repair, Ltd.,* 825 S.W.2d 1, 3 (Mo.App.1991).

A truck accident—be it on the highway or in a parking lot—is an accident directly attributable to the risk of being a truck driver. *See Dillard,* 685 S.W.2d at 923. The assault did not result from a private quarrel. We conclude that Loepke was entitled to workers' compensation benefits.

■ In its last point, Opies Transport contends that the commission's award is unlawful because the commission did not make unequivocal findings of fact as required by § 287.460.1. Opies Transport accuses the commission of merely outlining and summarizing the witnesses' testimony without indicating what weight or credibility it gave to any of the evidence.

■ The administrative law judge's decision, which the commission adopted as its own,[1] contains a section, entitled "Discussion," which sets forth basically a summary of the witnesses' testimony. We agree with Opies Transport that this discussion section does not meet the requirements of

§ 287.460.1 for findings of fact. It may be helpful to a reader who does not have access to the transcript, but it is not meaningful for the commission's or this court's review. The commission is obligated to read the transcript—not to rely on the administrative law judge's recitation of the evidence. We rely on the transcript in conducting judicial review.

■ Nonetheless, the discussion merely recites the testimony. It does not establish which of the facts set forth in the testimony the administrative law judge found to be true. The commission must make unequivocal, affirmative findings of the facts. *Parrott v. HQ, Inc.,* 907 S.W.2d 236, 244 (Mo.App. 1995). The discussion section is of no help to us in determining what facts the commission found. It provides nothing for a meaningful judicial review.

■ Following the discussion section, however, was a section entitled, "Findings and Conclusions." After the discussion section's multiple pages detailing the witnesses' testimony, this section set out in minimal, sketchy fashion a mix of facts and conclusions of law. Although the facts are not a model of clarity and barely avoid falling below the minimum required, they sufficiently inform us of what the commission found to be true. In the future, the commission would better serve our review if it would separate its findings of fact from its conclusions of law.

We affirm the commission's award.

LOWENSTEIN, P.J., and HOWARD, J., concur.

---

1. Section 286.090, RSMo 1994, requires the commission to make findings of fact and conclusions of law or to affirm or to adopt its administrative law judge's "decision." The commission in this case affirmed and adopted the administrative law judge's "award"—not the decision. The record suggests, however, that the commission deems the terms "decision" and "award" to be interchangeable. They are not. Because the parties do not make an issue of this matter, we deem the commission's incorporation of its administrative law judge's "award"—which referred to her findings of fact—to have incorporated the findings of fact and rulings of law so that the requirements of § 286.090 have been satisfied. In the future to avoid possible confusion, the commission would be well advised to revise its order to use the language of § 286.090: to affirm or to adopt its administrative law judge's "decision."