**Keith McCUTCHEN, Claimant–Respondent,**

v.

**PEOPLEASE CORPORATION and Edwards Transportation Company, Employers–Appellant.**

**No. 27075.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 5, 2006.

Application for Transfer Denied
May 30 and Aug. 22, 2006.

---

Mark G.R. Warren, Samantha Anne Harris, Inglish & Monaco, P.C., Jefferson City, for Appellant.

Nancy R. Mogab, Mogab & Hughes Attorneys, P.C., St. Louis, for Respondent.

PHILLIP R. GARRISON, Judge.

Peoplease Corporation ("Peoplease") and Edwards Transportation Company

("Edwards") (collectively referred to as "Employers") appeal the decision of the Labor and Industrial Relations Commission ("the Commission") in favor of Keith McCutchen ("Claimant") for temporary total benefits, compensation for medical treatment, and attorney fees.

From 2000 to 2003 Claimant was employed as a refrigeration mechanic by Edwards, a trucking company.[1] In 2003, Claimant was working as a shop supervisor, which included performing maintenance work on trucks, deciding which trucks to work on, and supervising and assigning tasks to other employees.

On July 14, 2003, Claimant, Claimant's twenty-year-old son, Keith Lee McCutchen ("Son"), Floyd "Butch" Bell ("Bell"), Scott Henry ("Henry"), and David Sterling ("Sterling") were working in the shop at Edwards. Claimant had assigned Son to drive around on a four-wheeler spraying weed killer on weeds growing on the fence rows and parking lot. After lunch, Son told Claimant that "the four-wheeler was messing up on him," and Claimant told him to wash the four-wheeler off, which was muddy, and to take another four-wheeler to finish spraying the weeds.

Son, frustrated at being repeatedly assigned to do what he felt was other employees' jobs, "went off" on Claimant and started cussing at him. Employers and Claimant disagree as to what happened next. Employers maintain that Claimant threw a bolt at Son, while Claimant argues that Son struck first by throwing the bolt at him, hitting Claimant in the lip.

There is no real dispute as to the remaining events. Both sides agree that Claimant told Son "he was fired," and Son reacted by picking up a broken broom handle from the trash can and repeatedly

striking Claimant on the right forearm and neck with it, causing Claimant to fall backwards into a stack of tires. When the stick broke Son picked up a lead pipe, which was approximately four foot long and one-and-a-half inches thick, and hit Claimant in the left forearm, puncturing a hole in his arm, which immediately began to bleed. Son then threw a large twelve-inch metal file, hitting Claimant in the stomach. When Claimant pulled his knife out and acted as though he was going to throw it at Son, Son fled and the confrontation ended. Son was fired the following day. No police report was ever filed in connection with this incident.

Henry helped Claimant into the office area and he was able to survey his injuries. Claimant had a knot on his right forearm, and a large, deep hole in his left arm. One of the office secretaries took Claimant to the Ferguson Medical Clinic for treatment. This incident resulted in severe back pain and Claimant required frequent hospital visits and various treatments, which eventually led to him being given a weight restriction of ten pounds and being limited to office work.

Claimant filed a "Claim for Compensation" with the Missouri Division of Workers' Compensation ("the Division") for the injuries he sustained on July 14, 2003, while working for Edwards. Employers filed their answer and a hearing was held before an Administrative Law Judge ("ALJ"). On August 16, 2004, the ALJ entered its findings of facts and conclusions of law denying Claimant's claim.

Claimant filed an application for review with the Commission, which reversed the decision of the ALJ, and remanded the matter to the Division. The Commission found that Claimant was "entitled to, and

1. In the summer of 2003, Claimant became an employee of Peoplease and his paychecks started coming from Peoplease, but he still worked at Edwards.

[E]mployer/insurer shall provide, such future medical aid, including prescriptions and therapy, as may be determined to be necessary to cure and relieve [Claimant's] condition of ill being"; that his claim for temporary total disability from November 7, 2003, thru April 29, 2004, was meritorious; and that Employers were to pay the sum of $523.94 per week for the twenty-five weeks in question. Employers appeal the Commission's award.[2]

Employers rely on two points of error in this appeal. In Point I, they argue that the evidence established Claimant was the aggressor and therefore his injuries from the altercation were not compensable. In Point II, Employers argue the evidence demonstrated that the conflict was of a private nature and therefore did not have sufficient connection with Claimant's employment to be compensable. We disagree with both and affirm.

 In reviewing the Commission's decision we are constrained by Section 287.495.1[3] which states in pertinent part:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its power;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Absent fraud, the factual findings of the Commission are conclusive and binding on us. *Ming v. General Motors Corp.*, 130 S.W.3d 665, 667 (Mo.App. E.D.2004.) As no fraud is alleged in this case, our review "is limited simply to whether the facts found by the Commission 'support the award' and whether there was 'sufficient competent evidence to warrant the making of the award.'" *Rono v. Famous Barr*, 91 S.W.3d 688, 691 (Mo.App. E.D.2002) (overruled on other grounds by *Hampton*, 121 S.W.3d at 223).

 When the Commission affirms or adopts the findings of the ALJ, we review those findings as adopted. *Shipp v. Treasurer of State*, 99 S.W.3d 44, 50 (Mo.App. E.D.2003) (overruled on other grounds by *Hampton*, 121 S.W.3d at 223). However, when the Commission has reversed the ALJ, as was done in this case, we examine the whole record and we will uphold the Commission's decision if it is supported by sufficient competent and substantial evidence. *See Hampton*, 121 S.W.3d at 222–23. Although rare, this standard is not met when "the award is contrary to the overwhelming weight of the evidence." *Id.* at 223.

 In Point I, Employers argue that Claimant, not Son, was the initial aggressor and therefore is not entitled to workers' compensation benefits. In order for an injury to be compensable it must be considered an "accident arising out of and

---

**2.** We recognize that ordinarily we have no jurisdiction to decide issues concerning a temporary or partial award pursuant to Section 287.510. *Hillenburg v. Lester E. Cox Medical Center*, 879 S.W.2d 652, 656 (Mo. App. S.D.1994) (overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). However, when the temporary or partial award is treated as a final determination as to whether employer had *any* liability for payment of compensation benefits, appellate jurisdiction is proper. *Id.*

**3.** All references to statutes are to RSMo (2000) unless otherwise indicated.

in the course of the employee's employment." Section 287.120.1. The statute defines "accident" as including, "but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee." Section 287.120.1.

■ Therefore, if the assault was provoked by the claimant he is not entitled to benefits under the workers' compensation statute. *Van Black v. Trio Masonry, Inc.,* 986 S.W.2d 200, 203 (Mo.App. W.D.1999) (overruled on other grounds by *Hampton,* 121 S.W.3d at 223). The claimant does not need to actually strike his assailant first to be considered the initial aggressor. *Id.* at 202. Furthermore, an employee reacting violently to a verbal assault can be considered as the initial aggressor. *Id.*

Essentially the issue before us is one of witness credibility. Claimant and Son both testified that Son threw the bolt at Claimant, which escalated the situation from a verbal disagreement into a physical altercation. On the other hand, Bell testified that he witnessed Claimant throw the bolt which struck Son in the head. Sterling testified that Son told him immediately following the fight, that Claimant "hit him first." Henry also testified that Son told him that Claimant had "hit him in the head," although Henry did not state when during the altercation this occurred.[4] Bell, Henry, and Sterling all testified to noticing blood coming from Son's head, which Son explained as resulting from a scratch he received when the stick he struck Claimant with broke in his hands. In reversing the ALJ, the Commission stated:

> [W]e find the testimony of [Claimant] and [Son] to be the more comprehensive. We accept the incident as related by [Claimant] and [Son]. We accept [S]on's

explanation as to the reason he attacked [Claimant].

Employers argue, citing *Davis v. Research Medical Center,* 903 S.W.2d 557, 570–571 (Mo.App. W.D.1995) (overruled by *Hampton,* 121 S.W.3d at 223), that when the Commission overrules the ALJ based upon its determination as to the credibility of the witnesses, we should give the ALJ's determination "due deference." However, after *Davis,* the Missouri Supreme Court decided *Hampton,* in which it upheld the Commission's reversal of an ALJ's ruling based upon the Commission's contrary credibility determination. *Hampton,* 121 S.W.3d at 223–224. The Court did not defer to the ALJ's determination in that case, nor did it address that portion of *Davis.* Rather, the *Hampton* court sought to simplify the standard of review in cases in which the Commission came to a different conclusion than the ALJ by stating that in this context, appellate courts are simply to consider whether, in light of the whole record, there is sufficient competent and substantial evidence to support the Commission's award. *Id.* at 223.

As noted above Claimant and Son testified that Son threw the bolt which escalated the situation. This is sufficient evidence to support the Commission's finding that Claimant was injured in an unprovoked assault. Only Bell testified that he saw Claimant throw the bolt, hitting Son in the head. Sterling testified that Son told him Claimant had hit him first and Henry simply testified that Son told him Claimant hit him in the head, without explaining when it occurred. Neither Sterling or Henry testified as to what caused Son's head to bleed and Son testified that it began bleeding after he was scratched by

---

4. Claimant's hearsay objections were overruled by the ALJ under the excited utterance exception.

the stick with which he struck Claimant. Given the conflicting nature of the testimony in this case, we simply cannot conclude that the overwhelming weight of the evidence demonstrated that Claimant was the aggressor. Accordingly, Point I is denied.

■ In its Point II, Employers contend that Claimant's injuries resulted from an assault which, although it occurred on the job site, merely sprung out of a personal conflict with Son, unrelated to his employment. In order for an injury to be compensable, it must both "aris[e] out of" and be "in the course of" Claimant's employment. Section 287.120.1.

■ An injury "aris[es] out" of one's employment if it results from a natural and reasonable incident connected with the employment and is "the rational consequence of some hazard connected with the employment." *Champion v. J.B. Hunt Transport, Inc.,* 6 S.W.3d 924, 928 (Mo. App. S.D.1999). An injury is said to be "in the course of" one's employment "when it occurs within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment." *Id.* It is clear that the assault on Claimant, and his resulting injuries occurred "in the course of" his employment because the altercation between him and Son occurred while both were working and in Employers' shop where both regularly carry out their duties. The question is whether Claimant's injuries "arose out" of his employment.

■ The legislature clearly contemplated that some injuries resulting from an assault or violence would be compensable under the workers' compensation regime as it included the phrase; "injury or death of the employee caused by the unprovoked violence or assault against the employee," in its definition of "accident" in Section 287.280.1. In the context of Missouri workers' compensation law, there are three recognized types of assault:

1st: Those which are invited by the dangerous nature of the employee's duties, or by the dangerous environment in which he is required to perform them, or are the outgrowth of frictions generated by the work itself, but which in either event are invariably revealed to be the result of some risk directly attributable to the employment. Injuries resulting from assaults of that character are compensable in Missouri....

2nd: Those committed in the course of private quarrels that are purely personal to the participants. Injuries resulting from assaults of that character are non-compensable in Missouri....

3rd: Irrational, unexplained or accidental assaults of so-called "neutral" origin, which, although they occur "in the course of" the victim's employment cannot be attributed to it on any more rational basis than the employment afforded a convenient occasion for the attack to take place.

*Dillard v. City of St. Louis,* 685 S.W.2d 918, 921 (Mo.App. E.D.1984) (overruled on other grounds by *Hampton,* 121 S.W.3d at 223) (quoting *Liebman v. Colonial Baking Co.,* 391 S.W.2d 948, 951 (Mo.App.1965)). Although not compensable when these categories were developed, injuries resulting from assaults falling into the third category are compensable under the current version of Section 287.120.1. *Dillard,* 685 S.W.2d at 921. Only those assaults resulting from private conflicts, the second category, are considered non-compensable. *Wolfe v. DuBourg House/Archdiocese of St. Louis,* 93 S.W.3d 855, 858 (Mo.App. E.D.2003) (overruled on other grounds by *Hampton,* 121 S.W.3d at 223).

Employers contend that this assault was born of an entirely private quarrel be-

tween Claimant and Son and thus, falls into the second category. While they concede that the argument itself pertained to their employment, Employers rely on multiple cases for the proposition that a work-related argument which leads to an assault is not compensable when underlying private conflicts appear to be the chief catalyst. Employers point to *Person v. Scullin Steel Co.*, 523 S.W.2d 801 (Mo. banc 1975) (injuries sustained during an assault stemming from an argument about traveling to and from work should not be compensable in light of general rule stating that injuries sustained while actually traveling to and from work are not considered as arising out of employment), *Freeman v. Callow*, 525 S.W.2d 371 (Mo.App.1975) (overruled on other grounds by *Hampton*, 121 S.W.3d at 223) (claimant was assaulted while at work by the husband of a friend who believed Claimant was carrying on an inappropriate relationship with his wife), *Dillon v. General Motors*, 784 S.W.2d 915 (Mo.App. E.D.1990) (overruled on other grounds by *Hampton*, 121 S.W.3d at 223) (claimant called a co-worker a "grunt" and was struck by him), all of which were assaults found to stem from a conflict of a strictly personal nature.[5]

Those cases are clearly distinct from the one at hand. Here, evidence was presented that Son became enraged at Claimant, his supervisor, because he disagreed with a work assignment he was given. There was evidence that Claimant told Son to wash a four-wheeler, Son refused and became angry. Furthermore, evidence was presented that Son was "tired" of doing work he felt was not part of his job. As a supervisor, dealing with an angry employee whom refuses to do his job as instructed is part and parcel of Claimant's employ-

ment. This is simply an "outgrowth of the frictions generated by the work itself." *Dillard*, 685 S.W.2d at 921.

Employers contend that personal origins of the assault were evidenced by a tenuous father/son relationship which had manifested itself multiple times in verbal arguments; Claimant's failure to report the assault to the police; and that Son had not, despite being "hot temper[ed]," engaged in physical confrontations with other co-workers. We disagree.

Employers do not explain, nor do we see, the relevance of Claimant's failure to report the assault to the police or of Son's failure to engage in physical confrontations with other co-workers. The only evidence suggesting a "tenuous" father/son relationship was the alleged past arguments between the two. These alleged arguments do not advance Employers' cause as the record demonstrates that those arguments were related to Claimant and Son's employment. They all occurred at work and were witnessed by co-workers who either testified that they did not know what the arguments were about or that they pertained to their work. Furthermore, there was testimony that most of the disagreements revolved around Son refusing to follow Claimant's instructions, just as was the case with the argument and the resulting assault which gave rise to this appeal. Finally, both Claimant and Son testified that they had a healthy and loving relationship outside of work.

Employers do not point to any other evidence suggesting this was strictly a personal fight between a father and his son. Rather Employers argue that "[i]t simply does not make sense" that Son would violently assault his father if they enjoyed a

---

**5.** Employers cited to four other cases as well, however, as they all preceded the development of the three categories of assault as

described in *Dillard*, we need not distinguish them here.

loving relationship. However, we our constrained in our review of the Commission's decision by Section 284.495.1, which does not allow us to delve into nuances of Claimant's relationship with Son that do not appear in the record. As described above, the record reveals sufficient evidence to support the Commission's finding that this assault arose out of, and was in the course of Claimant's employment. Accordingly, Point II is denied.

The Commission's decision is affirmed.

SHRUM, P.J. and BARNEY, J., concur.